**Charles William GUYTON, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 35182.

Court of Criminal Appeals of Texas.

Jan. 9, 1963.

Rehearing Denied Feb. 20, 1963.

M. L. Miller and James H. Martin, Dallas, for appellant.

Henry Wade, Dist. Atty., John Rogers and Emmett Colvin, Jr., Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

McDONALD, Judge.

The offense is pandering; the punishment, five years in the penitentiary.

The state's evidence, adduced from testimony of B. F. Rodgers, reflects that he was a police officer for the city of Dallas; that he was working in plainclothes in the vicinity of the Greyhound Bus station in Dallas, with Officer J. R. Helm, when appellant pulled over, sounded his horn, and motioned with his head when Rodgers looked toward him; that Rodgers started over to the car but other cars to the rear of appellant's car started sounding their horns and appellant told Rodgers that he would go around the street and come back; that appellant told Rodgers to wait for him and that appellant returned and parked and asked Rodgers what he was doing. Rodgers responded that he was waiting for a bus. Appellant then asked Rodgers if he would like to rent a car and when Rodgers stated that he had no use for a car, appellant pointed out that if he had a car he could find a girl. As a result of their conversation, a deal was made for appellant

to drive Rodgers around town and find him a girl with whom to have sexual intercourse. Rodgers' testimony reflects that upon appellant's failure to locate a white girl Rodgers told appellant it did not matter to him whether it was a white or colored girl. Appellant then stated that he knew where there were plenty of them within ten blocks. The evidence reflects that appellant was wearing an Humble Service station uniform on the night in question and that he then drove to Hall and Thomas streets, where he stopped and asked a fellow if he had seen a tall, red-skinned girl; that he received a negative response and that he then stated: " * * * if you see her, tell her I'm looking for her." Appellant then drove on and parked in front of the San Jose Hotel on Thomas street and said that he was going upstairs and that he would be back in a few minutes; that after about three or four minutes a colored girl came down the stairway to the car and said to Rodgers: "Are you for business?," and Rodgers answered affirmatively. She then asked if he had $10 and Rodgers said that he did but he was already with another fellow that had gone upstairs. The girl then asked: "Are you with the man in the Humble uniform?" Rodgers testified that the girl was Marjorie Riggs; that she was rather red-skinned; that when he indicated that he was with the man in the Humble uniform she said: "Well, he sent me down here." Rodgers then related that he asked her to get in the car but she said she was going upstairs for a minute; that when she did so she met appellant on the first step and she conversed with him out of hearing of Rodgers. Appellant and Marjorie Riggs then came out together; appellant got in the car and said they would pick up the girl a couple of blocks away and they did so; a conversation about the money ensued, whereupon Rodgers reached in his pocket as if reaching for money but instead produced his police identification and arrested both appellant and Marjorie Riggs. The state established that the girl was a female person obtained by appellant for Rodgers for an act of illicit sexual intercourse for hire. Rodgers identified the appellant in court as the man who got the woman for him. Although appellant testified that he did not know Marjorie Riggs, Officer Rodgers testified on recall that she stated that this was about the third or fourth "trick" brought by appellant.

State's witness, Officer James R. Helm, testified to substantially the same facts as did Officer Rodgers with reference to appellant driving up to the bus station and picking up Rodgers.

Appellant testified in his own behalf and related his employment at a Humble station and that he received disability payments resulting from a medical discharge from the service in World War II. He admitted meeting Officer Rodgers but denied any proposals on his part and stated that the entire transaction was Rodgers' idea and that Rodgers instructed him where to drive and that Rodgers made the proposal to the girl.

Appellant contends that the indictment should have been quashed for the reason that it is defective in that it fails to set out the means of procuring the female. We observe that the indictment contains the allegation that appellant procured Marjorie Riggs to engage in prostitution, to wit, an act of illicit sexual intercourse, for hire, with B. F. Rodgers, a male person, in the city of Dallas.

We are not so much concerned with the form of the indictment as we are with the proof adduced by the state to substantiate it.

■■ Appellant insists that the evidence is insufficient to sustain the conviction, it being his theory that a "panderer" must get part of the proceeds or earnings of the prostitute. While appellant's theory might be tenable in some instances, we do not agree with him in this case, but we do agree that the evidence is insufficient to sustain the conviction for the offense of "pandering." We have labored diligently to distinguish the offenses of "procuring," Art.

525, P.C., and "pandering," Art. 519, P.C. We observe that the offense of "procuring," in simple language, means that whoever shall procure any female for the purpose of meeting and having unlawful sexual intercourse with any male person, etc., shall be fined, etc. It is to be noted that the "procuring" statute does not mention the word "prostitution." The "pandering" statute penalizes those offenders who use various means to procure women to engage in prostitution or to become or remain a prostitute. Wyatt v. State, 169 Tex.Cr.App. 499, 335 S.W.2d 386, 387.

█ Our construction of the above statutes is that the procurement of a female to be at a certain place for a single or isolated act of unlawful sexual intercourse constitutes the misdemeanor offense of procuring, punishable under Art. 525, Vernon's Ann.P.C., while procurement of a female to take up the practice or profession of prostitution or to become or remain a common prostitute, without regard to where she is to ply her trade, constitutes the felony offense of pandering, under Art. 519, Vernon's Ann.P.C.

It is evident that the state failed to show that appellant procured a female to engage in prostitution. The facts show that she was already engaged in prostitution, was a prostitute, and needed no one to urge her to enter the business or to remain a prostitute. We do not think that the evidence is sufficient to sustain the jury's verdict.

The judgment is reversed and the cause is remanded.

### ON STATE'S MOTION FOR REHEARING

WOODLEY, Presiding Judge.

The state questions our conclusion that the facts show the misdemeanor offense of procuring rather than the felony offense of pandering, for which he was tried and found guilty.

To illustrate the correctness of our holding, we direct attention to the court's charge herein defining the offense for which the appellant was on trial in the following words:

"I instruct you that the statutes of the State of Texas provide that whoever shall invite, solicit, procure, allure or use any means in alluring or procuring any female to visit and be at any particular house, room or place for the purpose of meeting and having unlawful sexual intercourse with any male person, shall be punished by confinement in the penitentiary for any term of years not less than two."

Except for the punishment, the court's definition is in the language of Art. 525 P.C. which defines the misdemeanor offense of procuring and reads, in part:

"Whoever shall invite, solicit, procure, allure or use any means in alluring or procuring any female to visit and be at any particular house, room or place for the purpose of meeting and having unlawful sexual intercourse with any male person, * * * shall be fined not less than fifty nor more than two hundred dollars and be confined in jail not less than one nor more than six months."

We remain convinced that the evidence, though sufficient to show the misdemeanor offense of procuring, is not sufficient to sustain this conviction for the felony offense of pandering. Any other conclusion would require a holding that there is no longer a misdemeanor offense of procuring a female for unlawful sexual intercourse, and that such act once punishable under Art. 525 P.C. now constitutes pandering under Art. 519 V.A.P.C. as amended. We cannot reach such conclusion, nor can we find a more accurate construction of the two statutes than that stated in our original opinion herein.

The state's motion for rehearing is overruled.