**J. D. GARRETT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 54139.**

Court of Criminal Appeals of Texas, Panel No. 3.

May 31, 1978.

William A. Odom, Houston, for appellant.

Carol S. Vance, Dist. Atty., Robert A. Shults and Chris T. Hanger, Asst. Dist. Attys., Houston, for the State.

Before ROBERTS, PHILLIPS and VOLLERS, JJ.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction for promotion of prostitution under our present Penal Code.[1] After a trial before the court, the trial judge assessed the appellant's punishment at six months' confinement in the Harris County jail.

The appellant contends that the evidence was insufficient and that the trial judge abused his discretion by overruling the appellant's motion for new trial. We affirm.

The record reveals that on December 2, 1975, Officer W. F. Hosea of the Houston Police Department vice squad received information from a confidential informant that two males, two females and two children were living in a house at 709 W. 18th Street in Houston. The informant told Hosea that he could procure prostitution services from the people living at the residence.

Pursuant to this information, Hosea and his partner, Officer R. L. Gonzales, proceeded to the residence at 12:15 a. m., on December 3, 1975. When they arrived at the residence, they knocked on the door and were met by Barbara Jean Phillips. Hosea and Gonzales told Phillips that they had been told that they could "have some fun" at the residence and Phillips invited them in. Thereafter, Hosea and Gonzales discussed the possibility of sexual intercourse for hire with Phillips. Phillips told them

that for $25 each, $50 total, she would have sexual intercourse and deviate sexual intercourse[2] with Hosea and Gonzales. Hosea and Gonzales agreed that the price was fine, and they asked Phillips if anyone else was present at the residence. Phillips responded that her husband, subsequently identified as the appellant,[3] was not home, but that he would shortly return.

Hosea and Gonzales told Phillips that they didn't want to get into any trouble with the appellant and Phillips responded that "[w]ell, my husband doesn't care." Hosea and Gonzales responded that they would wait until he returned. The officers then left the residence.

Hosea and Gonzales maintained surveillance of the residence and at approximately 2:00 a. m. the appellant arrived. Shortly thereafter, the officers reapproached the residence and knocked on the door. Phillips let them in and told them that her husband, the appellant, was home and that he wanted to talk to Hosea and Gonzales. The appellant then entered the room, dressed only in his underwear, and asked Hosea and Gonzales what they were looking for. The officers told him that they wanted a date of prostitution and the appellant responded that they could have sexual intercourse with Phillips as long as they didn't cause any trouble and as long as they did not mistreat her. Gonzales again asked the appellant if it was alright if Hosea and he had a "sexual date" with Phillips and assured the appellant that there would not be "any problems whatsoever." The appellant reiterated that as long as Hosea and Gonzales did not cause any trouble, they could have all the fun that they wanted with Phillips for the $50 price that Phillips had quoted them.

Hosea then gave the appellant three marked $20 bills. The appellant left the room. The appellant immediately returned

---

1. V.T.C.A., Penal Code, Section 43.03.

2. See V.T.C.A., Penal Code, Section 21.01(1). Specifically, Phillips told Hosea and Gonzales she would perform fellatio upon them but she would not engage in sodomy with them.

3. The record reveals that the appellant and Phillips were merely living together.

with $10, which he gave to Hosea, and told the officers that they could "knock your lights out, but don't cause any shit." The appellant then left the room. The officers subsequently arrested Phillips and the appellant.

The appellant testified on his own behalf. He acknowledged taking the money from Hosea and giving Hosea $10 change, but he denied that he had an agreement to split the money with Phillips. According to the appellant, the only reason he took the money from Hosea was because Phillips had told him she was afraid of Hosea and Gonzales and the appellant thought it would be safer if she didn't keep the money with her during the services she was about to perform. The appellant also explained that he was aware that Phillips was a prostitute and that she engaged in such conduct to support an alcoholic habit, but denied any involvement in her illegal activities.

The defense also called Phillips to testify for the appellant. She related that on one occasion the appellant had beaten her because she would not go out and "prostitute." She denied the existence of any agreement to split the money she received from being a prostitute with the appellant, and explained that she engaged in such activities to support her alcoholic habit which the appellant had refused to support.

The appellant's first contention is that the evidence was insufficient. Specifically, the appellant contends that there was no evidence to show an agreement between Phillips and the appellant to split the proceeds of prostitution services or to show that the appellant solicited, procured, or invited Phillips to engage in sexual intercourse or solicited, procured, or invited the officers to engage in sexual intercourse with Phillips.

V.T.C.A., Penal Code, Section 43.03, states:

"43.03.  Promotion of Prostitution

(a) A person commits an offense if, acting other than as a prostitute receiving compensation for personally rendered prostitution services, he knowingly receives money or other property pursuant to an agreement to participate in the proceeds of prostitution.

(b) An offense under this section is a Class A misdemeanor."

The elements of the offense of promotion of prostitution are therefore:

(1) A person

(2) acting other than as a prostitute receiving compensation for personally rendered prostitution services,

(3) knowingly receives money or other property

(4) pursuant to an agreement to participate in the proceeds of prostitution.

It is well established that direct evidence is that evidence which directly demonstrates the main fact to be proved. Circumstantial evidence, on the other hand, is that evidence which directly proves a secondary fact which, by logical inference, demonstrates the main fact to be proved. *Crawford v. State,* 502 S.W.2d 768 (Tex.Cr. App.1973).

In the present case, there was direct evidence that the appellant physically received the money from Hosea. The agreement to participate in the proceeds of Phillips' prostitution services was not proven by direct evidence. However, Phillips testified that the appellant had beaten her on one occasion for her refusal to perform prostitution services. This fact, when coupled with the fact that the appellant physically took the money from Hosea, was circumstantial evidence of the existence of an agreement between Phillips and the appellant to share the proceeds from Phillips' prostitution services.

We therefore hold that there was sufficient evidence for the trial judge to have found beyond a reasonable doubt that an agreement existed between Phillips and the appellant whereby the appellant would receive a portion of the money earned by Phillips for her services as a prostitute.

The more difficult question, however, is whether V.T.C.A., Penal Code, Section 43.03 requires, as the appellant suggests, proof that a defendant solicited, pro-

cured, or invited a prostitute to engage in sexual intercourse or solicited, procured, or invited others to engage in sexual intercourse with a prostitute.

The appellant contends that Section 43.03 of our present Code is merely a codification of Articles 519 [Pandering] and 525 [Procuring] of our 1925 Penal Code and that the evidentiary requirements of old Articles 519 and 525 are applicable to Section 43.03. In *Langer v. State,* 489 S.W.2d 926, 927–28 (Tex.Cr.App.1973), we quoted from *Guyton v. State,* 365 S.W.2d 6, 8 (Tex.Cr.App.1973) as follows:

" . . . that the offense of 'procuring,' in simple language, means that whoever shall procure any female for the purpose of meeting and having unlawful sexual intercourse with any male person, etc., shall be fined, etc. It is to be noted that the 'procuring' statute does not mention the word 'prostitution.' The 'pandering' statute penalizes those offenders who use various means to procure women to engage in prostitution or to become or remain a prostitute. *Wyatt v. State,* 169 Tex.Cr.App. 499, 335 S.W.2d 386, 387.

"Our construction of the above statutes is that the procurement of a female to be at a certain place for a single or isolated act of unlawful sexual intercourse constitutes the misdemeanor offense of procuring, punishable under Art. 525, Vernon's Ann.P.C., while procurement of a female

to take up the practice or profession of prostitution or to become or remain a common prostitute, without regard to where she is to ply her trade, constitutes the felony offense of pandering, under Art. 519, Vernon's Ann.P.C."

Thus, it is clear that both Articles 519 and 525 of the 1925 Code required proof that the defendant procured women for certain purposes.

However, both Vernon's Ann.P.C., Articles 519 [4] and 525 [5] *expressly* required a defendant to solicit, procure, or invite a female to become an inmate of a house of prostitution or to perform unlawful sexual conduct, et cetera. See Vernon's Ann.P.C., Articles 519 and 525. V.T.C.A., Penal Code, Section 43.03 *does not* expressly require any such conduct by a defendant.

We therefore hold that V.T.C.A., Penal Code, Section 43.03 does not require proof that a defendant solicited, procured, or invited a prostitute to engage in illegal sexual intercourse or solicited, procured, or invited others to engage in sexual intercourse with a prostitute. The appellant's first contention is overruled in all respects.

■ The appellant's second contention is that the trial judge committed reversible error by denying the appellant's motion for a new trial based on newly discovered evidence. In support of his contention, the appellant has attached to his appellate brief

4. Vernon's Ann.P.C., Article 519 states:

"Any person who shall procure or attempt to procure or be concerned in procuring with or without her consent a female for prostitution, or who by promises, threats, violence or by any device or scheme shall cause, induce, persuade or encourage a female to engage in prostitution; or shall by fraud or artifice, or by duress of person or goods, or by abuse of any position of confidence or authority, procure any female person to become or remain a prostitute, or to come into or leave this state for the purpose of prostitution, or who shall procure any female person to engage in prostitution within this state, or to come into or leave this state for the purpose of prostitution, or who shall give or agree to receive or give any money or thing of value for procuring or attempting to procure any female person to engage in prostitution within this state, or to come into this state or leave this state, for the purpose of prostitution,

shall be confined in the penitentiary for any term of years not less than two."

5. Vernon's Ann.P.C., Article 525 states:

"Whoever shall invite, solicit, procure, allure or use any means in alluring or procuring any female to visit and be at any particular house, room or place for the purpose of meeting and having unlawful sexual intercourse with any male person, or to take part or in any way participate in any immoral conduct with men or women, or to use at such place any intoxicating liquor; or give to any person the name and address, or either, or photograph of any female for the purpose of enabling the person to whom the same is given to meet and have unlawful sexual intercourse or to bring about or procure such intercourse with such female shall be fined not less than fifty nor more than two hundred dollars and be confined in jail not less than one nor more than six months."

an affidavit signed by Barbara Jean Phillips. The affidavit was not filed in the trial court and is not contained in the appellate record. It is well established that this Court will not consider affidavits or other matters attached to appellate briefs. *Rasberry v. State,* 535 S.W.2d 871 (Tex.Cr.App. 1976); *Grant v. State,* 505 S.W.2d 259 (Tex. Cr.App.1974). Appellant's second contention is overruled.

The judgment is affirmed.