**The STATE of Texas, Appellant,**

v.

**Ruben SANDOVAL, Appellee.**

**Nos. 13–91–505–CR, 13–91–521–CR.**

Court of Appeals of Texas,
Corpus Christi.

Nov. 17, 1992.

Rehearing Overruled Dec. 17, 1992.

Rebecca Pool, County Dist. Attys. Office, Rene Guerra, Dist. and County Atty., Gerald G. Francisco, Asst. Criminal Dist. Atty., Hidalgo County Courthouse, Edinburg, for appellant.

Homero Garza, Edinburg, Mark Stevens, Nancy B. Barohn, Daniel Maeso, San Antonio, for appellee.

Before SEERDEN, KENNEDY and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

SEERDEN, Justice.

Ruben Sandoval was charged by indictment and information with two incidents of

barratry.[1] Sandoval filed motions to dismiss these charging instruments, and the trial court granted them. The State appeals. *See* Tex.Code Crim.Proc.Ann. art. 44.01(a)(1) (Vernon Supp.1992). We affirm the trial court's orders.

At a hearing, Sandoval presented evidence and argument on some of the grounds contained in his motions. At the conclusion of the hearing, the trial court orally found that the charging instruments should be dismissed on several grounds. The trial court then entered written orders generally granting the motions. The trial judge did not specify which grounds he found meritorious. Because the motions were generally granted, the State has raised points of error, thirty-seven in total, challenging every ground which Sandoval raised. Generally speaking, the State has brought two points of error, one referring to the indictment and one referring to the information, for each of appellee's grounds to dismiss. When possible, we will address the State's points together.

■ By points of error one and two, the State contends that the trial court erred by generally granting Sandoval's motions because the orders do not accurately reflect the court's rulings made in open court. The State points out that the trial court did not rule in open court on all of the grounds included in the written motions. It is argued that we should reform the trial court's orders to reflect the granting of only those matters which were raised and disposed of favorably to Sandoval in open court. The State asserts that if we do not reform the trial court's orders, we will be encouraging defendants to file "shotgun motions" which, if granted, will require the State to attack every allegation made in the motions. The State further asserts that the general granting of motions encourages sloppy or vague judicial reasoning which ultimately leaves an appellate court guessing at the reasons for a trial court's rulings. Appellee responds that the trial court was not required to be more specific in its orders and committed no error. Appellee further contends that if the State had complaints about the form of the orders, then it should have objected in the trial court. *See* Tex.R.App.P. 52(b).

While the trial court is not required to specify the reasons for its rulings we strongly urge trial courts to do so for the reasons urged by the State. In this case, for example, several of Sandoval's grounds for dismissing the charging instruments are clearly without merit and were not presented in open court. We find, however, that the trial judge did rule on these grounds when he signed the general written orders granting the motions. Therefore we hold that the State, as it has, must challenge every ground raised in the motions to preserve its right to appellate review. *Cf. Moore v. State*, 605 S.W.2d 924, 926 (Tex.Crim.App.1980) (defendant failed to preserve error on appeal challenging revocation of probation when he failed to raise any contentions concerning one finding for revocation). The better practice would be for the trial court to overrule specifically those grounds not granted. Such practice would clarify the issues on appeal and promote judicial economy. In the present case, however, the most judicially economical course for us to resolve this appeal is to address the merits of the State's points of error. We overrule points one and two and turn to the merits of the appeal.

The charging instruments alleged that Sandoval procured individuals to solicit employment for him to prosecute a law suit and to collect a claim. These acts constitute barratry under Tex.Penal Code Ann. § 38.12(a) (Vernon 1989). In specific, the indictment in our cause number 13–91–505–CR alleged that Sandoval:

> on or about the 31st day of October A.D., 1989, and before the presentment of this

---

1. Sandoval was originally charged with two counts of barratry by one indictment. When the State realized that count two contained a typographical error, it abandoned prosecuting Sandoval through that count of the indictment and chose to recharge Sandoval with this inci- dent by information. Although charging instruments were then pending against Sandoval in two causes, the trial court heard Sandoval's complaints against both charging instruments together.

indictment, in Hidalgo County, Texas, did then and there with intent to obtain a benefit for himself, said benefit being money, [Sandoval] did then and there procure Eduardo Rodriguez to solicit for [Sandoval] employment by Carmen Cruz to prosecute a suit and collect a claim for Carmen Cruz against Valley Coca–Cola Bottling Company as a result of the Mission Consolidated Independent School District bus collision with the Valley Coca–Cola Bottling Company motor vehicle which occurred on September 21, 1989.

The information in our cause number 13–91–521–CR alleged that Sandoval:

on or about October 31, 1989, did then and there with intent to obtain a benefit for himself, said benefit being money, [Sandoval] did then and there procure Noe Torres to solicit for [Sandoval] employment by persons unknown to prosecute a suit and collect a claim for said persons against Valley Coca–Cola Bottling Company as a result of the Mission Consolidated Independent School District bus collision with the Valley Coca–Cola Bottling Company motor vehicle that occurred on September 21, 1989.

■ Sandoval alleged, and the trial court found, that the term "procure" is unconstitutionally vague, imprecise, and undefined and that the statute was overbroad. In points of error three through six, the State contends that the trial court erred in making these findings. In response, appellee first contends that the State's points of error are multifarious. Although the State originally briefed State and Federal issues together in contravention of *McCambridge v. State*, 712 S.W.2d 499, 501–502 (Tex. Crim.App.1986), the State has rebriefed the points and has adequately separated the grounds. We will address the points on their merits. *See Dees v. State*, 722 S.W.2d 209, 213 (Tex.App.—Corpus Christi 1986, pet. ref'd).

■ An attack that a statute is overbroad is normally and traditionally reserved for complaints concerning alleged First Amendment violations. *Bynum v. State*, 767 S.W.2d 769, 772 (Tex.Crim.App.

1989). In *Bates v. State Bar of Arizona*, 433 U.S. 350, 380, 97 S.Ct. 2691, 2707, 53 L.Ed.2d 810 (1977), the Court held that an overbreadth challenge represents a departure from the traditional rule that a person may not challenge a statute on the ground that it might be applied unconstitutionally in circumstances other than those before the court. The reason for the special rule in First Amendment cases is apparent: An overbroad statute might serve to chill protected speech. *Id.* The use of overbreadth analysis reflects the conclusion that the possible harm to society from allowing unprotected speech to go unpunished is outweighed by the possibility that protected speech will be muted. *Id.* But, the justification for application of an overbreadth analysis applies weakly, if at all, in the ordinary commercial context. *Id.* In *Bates*, the Court refused to apply an overbreadth analysis to attorney advertising. *Bates*, 433 U.S. at 381, 97 S.Ct. at 2708. The Court stated that "overbreadth has been described by this Court as 'strong medicine,' which 'has been employed sparingly and only as a last resort.' " *Id.*

One year after *Bates*, the Court determined that in-person solicitation by a lawyer of remunerative employment is a business transaction, subject to only a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values. *Ohralik v. Ohio State Bar Association*, 436 U.S. 447, 457, 98 S.Ct. 1912, 1919, 56 L.Ed.2d 444 (1978). The Court stated that a lawyer's procurement of remunerative employment is a subject only marginally affected with First Amendment concerns. It falls within the State's proper sphere of economic and professional regulation. *Id.* at 459, 98 S.Ct. at 1920. The Court further stated that Ohralik could not make a successful overbreadth challenge because the challenged disciplinary rule preventing in-person solicitation was addressed to a particular kind of commercial solicitation and applied in the main in that context. *Id.* at 463, n. 20, 98 S.Ct. at 1922, n. 20. "As these Disciplinary Rules thus can be expected to operate primarily if not exclusively in the context of

commercial activity by lawyers, the potential effect on protected, noncommercial speech is speculative." *Id.*

In light of *Bates* and *Ohralik,* we determine that the Texas barratry statute is not subject to an overbreadth challenge and that if the statute is unconstitutional, Sandoval had to show that its application is unconstitutional as applied to him. In this regard, the facts of the case were not developed at the pretrial hearing, and thus Sandoval did not show that the statute is unconstitutional as applied to him. Accordingly, we find Sandoval's First Amendment challenge without merit. We now turn to whether the Texas Constitution affords Sandoval any greater protection.

■ Assuming that Texas has an overbreadth doctrine similar to the federal doctrine which permits a facial attack on the constitutionality of the statute, we must determine whether the Texas Constitution protects a lawyer's solicitation of clients for economic gain to a degree greater than the Federal Constitution. We find no support in the law for this theory. Both the Supreme Court of Texas and the Court of Criminal Appeals have rejected the notion that the barratry statute is unconstitutional because it imposes a limitation on the right of free speech. *See O'Quinn v. State Bar of Texas,* 763 S.W.2d 397, 403 (Tex.1988); *Barbee v. State,* 432 S.W.2d 78, 85 (Tex.Crim.App.1968). Therefore, we decline to apply an overbreadth analysis under the Texas Constitution and hold that the trial court erred in finding the statute facially unconstitutional on Texas free speech grounds. Having rejected Sandoval's overbreadth challenges, we now turn to his claims that the statute is unconstitutionally vague.

■ A challenge which alleges that a statute is unconstitutionally vague will be upheld only if the statute is impermissibly vague in all of its applications. *Briggs v. State,* 740 S.W.2d 803, 806 (Tex.Crim.App. 1987). A facial challenge is the most difficult because the challenger must establish that no set of circumstances exists under which the act would be valid. *Briggs v. State,* 789 S.W.2d 918, 923 (Tex.Crim.App.

1990). In addition, pretrial attacks on the constitutionality of statutes are difficult primarily because the facts of the case have not been developed. *See State v. Szela,* 820 S.W.2d 200, 205 (Tex.App.—Corpus Christi 1991, pet. ref'd).

■ A statute is vague when persons of common intelligence must necessarily guess at its meaning and differ about its application. *See Cotton v. State,* 686 S.W.2d 140, 141 (Tex.Crim.App.1985). A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminating applications. *Bynum v. State,* 767 S.W.2d 769, 773–75 (Tex.Crim.App.1989).

■ Statutory language is not unconstitutionally vague if it conveys a sufficient warning about the proscribed conduct when measured by common understanding and practices. *Farmer v. State,* 540 S.W.2d 721, 722 (Tex.Crim.App.1976). A statute is not rendered vague merely because the words or terms are not specifically defined. *Ahearn v. State,* 588 S.W.2d 327, 338 (Tex.Crim.App.1979). Statutory words are to be read in context and construed according to the rules of grammar and common usage. Tex.Gov't Code Ann. § 311.011 (Vernon 1988). Words defined in dictionaries and with meanings so well known as to be understood by a person of ordinary intelligence have been held not to be vague and indefinite. *Floyd v. State,* 575 S.W.2d 21, 23 (Tex.Crim.App.1978).

■ We find that the word "procure" is neither vague nor indefinite. It has been used in various statutes over the years. *See Garrett v. State,* 566 S.W.2d 605, 608 (Tex.Crim.App.1978) (discussing former Penal Code article 525 criminalizing "Procuring"); *Catching v. State,* 364 S.W.2d 691, 692 (Tex.Crim.App.1962) (discussing former Penal Code article 1191 regarding procuring an abortion); *Beck v. State,* 172 Tex. Crim. 534, 360 S.W.2d 410, 411 (App.1962) (discussing procuring prostitutes); *Norman v. State,* 170 Tex.Crim. 25, 338 S.W.2d 714, 714–15 (App.1960) (discussing former

Penal Code article 567b regarding procuring articles or services); *Womble v. State*, 165 Tex.Crim. 23, 301 S.W.2d 928, 930 (App.1957) (discussing procuring a police officer in regard to bribery laws).

The word "procure" is defined by one dictionary as:

1. to obtain or get by effort. 2. to cause to occur or be in effect. 3. to obtain (women or girls) for the purpose of prostitution. 4. to act a procurer or pimp.

The Random House College Dictionary, p. 1056 (1973). As may be seen by the definition, the concept of procuring is a relatively simple notion. We find that a person of normal intellect would be able to determine what the term "procure" means as used in the barratry statute. The trial court erred in finding "procure" vague and indefinite. Points three through six are sustained.

■ In points seven and eight, the State contends that the trial court erred in finding that the statute is void because it contains an unconstitutional mandatory presumption. One essential element of the offense of barratry is that the offender "intend to obtain an economic benefit for himself." *See* Tex.Penal Code § 38.12(a). Section 38.12(b) then provides, "Intent to obtain an economic benefit is presumed if the person accepts employment for a fee, accepts a fee, or accepts or agrees to accept money or any economic benefit."

■ Presumptions and inferences are evidentiary devices and in criminal law parlance they are said to be either mandatory or permissive. *Willis v. State*, 790 S.W.2d 307, 309 (Tex.Crim.App.1990). The distinction between a mandatory presumption and a permissive presumption is determined by the effect that each has upon the evidence. *Id.* Mandatory presumptions are unconstitutional because they eliminate the State's burden of proving guilt beyond a reasonable doubt. *Id.* A permissive presumption allows but does not require the trier of fact to infer the elemental fact or ultimate fact from the predicate evidentiary fact or facts. *Id.* at 310. It places no burden on the accused to refute or disprove the elemental fact once the predicate facts

have been established. Since it does not relieve the State's burden of proving guilt beyond a reasonable doubt, a permissive presumption is generally deemed constitutional if the reviewing court determines that a rational trier of fact could make the connection permitted by the presumption. *Id.* The Texas Penal Code provides that presumptions in Texas are permissive. Tex.Penal Code Ann. § 2.05 (Vernon Supp. 1992). As long as § 2.05 is adequately incorporated into the court's charge, a presumption will be construed as permissive. *Willis*, 790 S.W.2d at 310. Thus, the presumption in § 38.12(b), when operating with a correct jury charge, is permissive. Therefore, the trial court erred in finding, before trial, that the presumption is mandatory. Points seven and eight are sustained.

■ In points nine and ten, the State contends that the trial court erred in finding that the charging instruments did not allege a culpable mental state. The culpability required under the statute is the intent "to obtain an economic benefit." Tex.Penal Code § 38.12(a). The issue is whether an independent culpable mental state must be alleged, i.e., whether the "procuring" must be intentional, knowing, etc. Section 6.02 of the Penal Code provides that: "If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element." Tex.Penal Code Ann. § 6.02 (Vernon 1974).

In determining whether the allegations against Sandoval were adequate, a review of the offense of theft is instructive. A person commits an offense if he "unlawfully appropriates property with intent to deprive the owner of the property." Tex.Penal Code Ann. § 31.03(a) (Vernon 1989). In *Ex parte Smith*, 645 S.W.2d 310, 311 (Tex. Crim.App.1983), the Court considered whether intentional, or knowing, or any other culpable mental state was a required element of the offense. The Court determined that there is no required culpability beyond that of the specific intent to deprive the owner of the property. *Id.* at 312. As the barratry statute requires the "procur-

ing" to be done with a specific intent, we find that no additional mental state must be alleged or proved. *See* G. Reamey, *The Crime of Barratry,* 53 Tex.Bar J. 1011, 1012 (1990). Points nine and ten are sustained.

In point eleven, the State contends that the trial court erred in finding that the charging instruments were invalid because of selective prosecution or because of the District Attorney's selective presentation of evidence to the grand jury. A substantial portion of the pretrial hearing on Sandoval's motions to dismiss was dedicated to determining what evidence the District Attorney presented to the grand jury which decided to indict. Appellee concedes in his brief that the trial court *did not* set aside the indictment on grounds of selective prosecution, but did rule that the District Attorney had failed to present available exculpatory evidence to the grand jury.

Reviewing the evidence adduced at the hearing in the light most favorable to the trial court's ruling, the facts show that the barratry allegations against Sandoval arose following a number of personal injury lawsuits brought in the Rio Grande Valley following a school bus accident in Mission. A number of attorneys were investigated by the District Attorney's Office and by the State Bar Association. Sandoval was one of these attorneys.

It was established that the District Attorney's file contained two statements by Eduardo Rodriguez which exculpated Sandoval with regard to count one of the indictment. The Honorable Rene Guerra, District Attorney for Hidalgo County, who presented the case to the grand jury testified that he was unsure whether he had read or presented these statements to the grand jury. Sandoval's position at trial was that these statements should have been presented to the grand jury for its consideration in evaluating probable cause. The trial court reviewed tapes of the grand jury and determined that a Rodriguez affidavit was not, but should have been, shown to the grand jury. Hence, the trial court found that the District Attorney had failed to present available exculpatory evidence to the grand jury.

Sandoval argues that Tex.Code Crim. Proc.Ann. art. 2.01 (Vernon Supp.1992) requires disclosure of exculpatory evidence in Texas. Article 2.01 provides in pertinent part that:

It shall be the primary duty of all prosecuting attorneys, including any special prosecutors, not to convict, but to see that justice is done. They shall not suppress facts or secrete witnesses capable of establishing the innocence of the accused.

Because we have upheld the trial court's order on another ground, we believe that whether Texas constitutional or statutory law requires a prosecutor to disclose exculpatory information to a grand jury is a question which need not be answered today. Furthermore, while a prosecutor who secretes exculpatory information from a grand jury may violate article 2.01, regardless of any applicable constitutional provision, it is not clear whether the quashing of an indictment for such violation would be statutorily authorized. Justice, of course, would best be served by a prosecutor affirmatively presenting a grand jury with any information which could affect its decision to return an indictment. Because of our disposition of this case on other grounds, the resolution of these questions is not appropriate at this time.

In point twelve, the State asserts that the trial court erred in finding selective presentation of evidence with respect to the information. As the information was not returned by the grand jury, the State's point is without merit. The trial court never found selective presentation of evidence with respect to the information. Point twelve is overruled.

In points thirteen and fourteen, the State contends that the trial court erred in finding that the charging instruments did not negate what Sandoval alleged was a statutory exception for non-profit organizations. The State contends that pro bono activities do not fall within the definition of solicitation, are not proscribed by statute, and therefore no statutory exception exists.

We agree. Penal Code § 38.01(11) defines "solicit" as:

> to communicate in person or by telephone with a claimant or defendant or with a member of the claimant's or defendant's family when neither the person receiving the communication nor anyone acting on the person's behalf has requested the communication. The term does not include communicating by a family member of the person receiving a communication, communicating by an attorney who has a prior attorney-client relationship with the person receiving the communication, or communicating with a qualified nonprofit organization for the purpose of educating laymen to recognize legal problems, to make intelligent selection of legal counsel, or to use available legal services.

Tex.Penal Code Ann. § 38.01(11) (Vernon Supp.1992). Penal Code section 2.02(a) provides that exceptions within the Penal Code are labeled by the phrase: "It is an exception to the application of. . . ." Tex.Penal Code Ann. § 2.02(a) (Vernon 1974). Nothing in § 38.01(11) begins with this phrase.

Appellee argues that the Courts have found exceptions which must be negated even when not so labeled. He cites *McElroy v. State,* 720 S.W.2d 490, 493 (Tex.Crim.App.1986); *Kohler v. State,* 713 S.W.2d 141, 144 (Tex.App.—Corpus Christi, 1986, pet. ref'd); *Threlkeld v. State,* 558 S.W.2d 472, 473 (Tex.Crim.App.1977). Appellee's reliance on these cases is misplaced. These cases all concern statutes other than the Penal Code. In the Penal Code, only those exceptions so labeled must be negated. *See* Practice Commentary to § 2.02. Points thirteen and fourteen are sustained.

In points fifteen and sixteen, the State contends that the trial court erred in finding that the charging instruments were invalid for omitting the word "economic" before the word "benefit." Under § 38.-12(a), an essential element of the offense is that the person act "with intent to obtain an economic benefit for himself." Each charging instrument alleged that Sandoval acted "with intent to obtain a benefit for

himself, said benefit being money." Article 21.17 of the Code of Criminal Procedure provides:

> Words used in a statute to define an offense need not be strictly pursued in the indictment; it is sufficient to use other words conveying the same meaning, or which include the sense of the statutory words.

Tex.Code Crim.Proc.Ann. art. 21.17 (Vernon 1989).

If a charging instrument omits specific reference to a word, term, or phrase that is a constituent element of the offense but, from reading the indictment as a whole, that element is supplied by necessary inclusion within an expressed word, term, or phrase, then the failure to specifically plead the word, term, or phrase will not render the charging instrument fundamentally defective. *Murphy v. State,* 665 S.W.2d 116, 118 (Tex.Crim.App.1983). Penal Code Section 38.01(4) defines economic benefit as "anything reasonably regarded as an economic gain or advantage." We find that the phrase, "said benefit being money," used in the charging instruments sufficiently conveys the same meaning as the statutory words "economic benefit" and meets the definition of § 38.01(4). Points fifteen and sixteen are sustained.

In points seventeen and eighteen, the State contends that the trial court erred in dismissing the charging instruments because of a fundamental inconsistency between the allegations in the information and the indictment. Appellee does not respond to these points. We have reviewed the allegations and find no inconsistency. Moreover, we do not find any legal basis to dismiss even if an inconsistency existed. Points seventeen and eighteen are sustained.

In points nineteen and twenty, the State contends that the trial court erred in dismissing the information because it did not identify by name the persons solicited. The information alleged that Sandoval procured Noe Torres to solicit for him employment by persons unknown to prosecute a suit and collect a claim. Appellee alleged that he was entitled to know the name or

names of the persons solicited so that he would have notice of the charges against him and so that he would be able to plead the judgment in bar of any prosecution for the same offense. *See* Tex.Code Crim. Proc.Ann. art. 21.04 (Vernon 1989).

Appellee relies, in part, on *Parkins v. State*, 116 Tex.Crim. 52, 28 S.W.2d 137 (App.1930). The *Parkins* Court held that when a person is charged with soliciting, the charging instrument must name the solicitee. We disagree with appellee that *Parkins* controls in this case. In *Parkins*, the defendant was accused of soliciting. In the present case, the defendant is accused of procuring a named person, Noe Torres, to solicit unnamed persons within a certain class. Under § 38.12(a)(4), there is no requirement that Noe Torres actually solicit anyone. The alleged act which constitutes the offense is the defendant's procurement of Noe Torres to solicit persons within a certain class. Points nineteen and twenty are sustained.

In points twenty-one and twenty-two, the State contends that the trial court erred in dismissing the charging instruments because they failed to allege the manner and means of procurement. While all essential elements of an offense must be alleged in the indictment, an indictment drafted in the language of the statute creating and defining an offense is ordinarily sufficient. *Daniels v. State*, 754 S.W.2d 214, 218 (Tex.Crim.App.1988). Although an indictment which tracks the language and terms of the statute is ordinarily sufficient, if the statutory language is not completely descriptive, so that particularity is required to afford the defendant notice as required, merely tracking the language of the statute may be insufficient. *Id.*

In this case, the indictment alleged the word "procure." In *Monroe v. State*, 143 Tex.Crim. 120, 157 S.W.2d 648, 649 (App. 1942), the Court of Criminal Appeals held in order to meet the requirement of definiteness, the indictment had to allege, in the face of a motion to quash, how the defendant procured or attempted to procure a prostitute. The decision was based on a line of cases requiring pandering indictments to allege the manner and means of procurement.

In addition, this reasoning has been applied in the following cases: *Castillo v. State*, 689 S.W.2d 443, 449 (Tex.Crim.App. 1984) ("start a fire" held insufficient to give adequate notice); *Doyle v. State*, 661 S.W.2d 726, 730 (Tex.Crim.App.1983) ("threaten" held insufficient to give adequate notice of how threat was made); *Miller v. State*, 647 S.W.2d 266, 267 (Tex.Crim. App.1983) ("damage and destroy" held insufficient to give notice of manner and means by which property was destroyed or damaged); *Jeffers v. State*, 646 S.W.2d 185 (Tex.Crim.App.1981) ("received bets" held insufficient to give adequate notice); *Ellis v. State*, 613 S.W.2d 741, 741–42 (Tex.Crim. App.1981) ("cause serious bodily injury" held insufficient to give adequate notice); *Cruise v. State*, 587 S.W.2d 403 (Tex.Crim. App.1979) ("cause bodily injury" held insufficient to give adequate notice); *Haecker v. State*, 571 S.W.2d 920, 921–22 (Tex.Crim. App.1978) ("torturing" held insufficient to give adequate notice). We hold that in the face of a motion to quash, the State must allege, in terms more specific than the statute, how the defendant allegedly "procured." Points twenty-one and twenty-two are overruled.

In points twenty-three through and twenty-six, the State contends that the trial court erred in dismissing because the charging instruments did not allege the type of solicitation or the manner and means of solicitation. We find that the State was not required to allege any specific type of solicitation. Sandoval was not accused of soliciting. He was accused of procuring someone to solicit clients for him. Generally, an indictment for one offense that includes another offense within its allegations need not allege the individual elements of the other offense. *See Bollman v. State*, 629 S.W.2d 54, 55 (Tex.Crim. App.1982); *Linville v. State*, 620 S.W.2d 130, 131 (Tex.Crim.App.1981); *Hammett v. State*, 578 S.W.2d 699, 708 (Tex.Crim.App. 1979). Moreover, the procurement section of the statute does not require that anyone even be "solicited." It requires that a per-

son procure another to solicit. Whether the procuree actually solicits is irrelevant to the offense. Points twenty-three through twenty-six are sustained.

In points twenty-seven through thirty-six, the State contends that the trial court erred in dismissing the charging instruments on the grounds that 1) they did not charge Sandoval with an act or omission which is an offense; 2) they did not allege everything which is necessary to be proved; 3) they did not set forth an offense in plain and intelligible words; 4) they did not contain the requisite sufficiency to be a bar to a subsequent prosecution; and 5) they did not provide notice sufficient to a person of common understanding. These grounds, which Sandoval included in his motion and which the State feels compelled to attack are, in essence, general statements of the specific complaints already addressed. Thus, no discussion of these points is required.

As the charging instruments fail to adequately describe the manner and means of procurement, the orders of the trial court are affirmed.