**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-22-00141-CR**
_____

**BRANDON LEE DAVIS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 9th District Court
Montgomery County, Texas
Trial Cause No. 21-04-05252-CR

**MEMORANDUM OPINION**

Appellant Brandon Lee Davis appeals his conviction for promotion of prostitution. *See* Tex. Penal Code Ann. § 43.03(a)(2). In three issues, Davis complains about the sufficiency of the evidence and ineffective assistance of counsel. For the reasons explained herein, we affirm the trial court's judgment.

# BACKGROUND

A grand jury indicted Davis for "promotion of prostitution-solicits[,]" a third-degree felony. *See id.* § 43.03(a)(2), (b). The indictment alleged that Davis did then and there, while "acting other than as a prostitute receiving compensation for personally rendered prostitution services, knowingly solicit [an undercover officer] to engage in sexual conduct, namely sexual intercourse, with another person for compensation, namely money[.]" During pretrial, Davis filed a sworn Application for Community Supervision From the Jury, stating that he had never been convicted of a felony. The case proceeded to a jury trial. The undercover officer with the Montgomery County Sheriff's Office testified that she and other members of the Human Trafficking Rescue Alliance Task Force conducted an undercover operation targeting buyers of sex. The undercover officer explained that she conducted the operation at a hotel with surveillance equipment and played the role of a person selling sex. She testified that the Task Force posted online advertisements on known prostitution services and human trafficking websites with the purpose of targeting buyers of sex. The undercover officer explained that the title of the advertisement used in this case stated "'Your favorite fuck buddy 25[,]'" indicating "it's for sexual intercourse." The advertisement stated, "sexy feisty and discreet. Im here for your pleasure and needs []. I love a good time. Im the real deal. No explicit pics and no

2

dirty talk. also no law. btw anal is on the menu . . . [.]" The undercover officer explained that the advertisement included her undercover phone number the Task Force used for the buyer to contact "Stacy," which was the name the undercover officer used as "part of the guise[.]"

The undercover officer testified that she received text messages responding to the advertisement from a designated phone number that she explained was Davis's, and those messages were presented at trial. Davis appeared alone at the undercover officer's hotel room after she received the last text message from Davis, and his recorded interactions and communications with her were presented to the jury. The evidence shows the following exchange occurred:

[Davis]: How u doing my queen

[Undercover officer]: good boo

[Davis]: Nice to[] hear im doing good myself []

[Undercover officer]: u gonna come see me

[Davis]: Yes let's work and be successful together

[Undercover officer]: Try m out first alwys wnt shit for free then a handout

[Davis]: I'm talking real relationship loving status baby King and Queen

[Undercover officer]: right

[Davis]: Yes indeed I can only see the best for us

3

[Davis]: What side of town are you located on?

[Undercover officer]: spring

[Davis]: Text me address

[Undercover officer]: 18456 IH 45

[Davis]: Okay my queen ima make u mines []

[Undercover officer]: okay

[Davis]: What's room #?

[Undercover officer]: u here baby

[Davis]: Yes

[Undercover officer]: 205

[Undercover officer]: Lol you gonna bring yo ass

[Davis]: Call me

[Undercover officer]: You didnt answer

[Davis]: Hold on bae battery going low

[Undercover officer]: you coming up or nah i have a charger for a c

[Undercover officer]: Usb

[Davis]: Ok Yes im coming

[Undercover officer]: Okay

[Undercover officer]: U playing

4

The undercover officer explained that she knew the messages were not from a buyer of sex but from a pimp, because based on her advertisement, she could be perceived as needing protection or help setting up dates. The undercover officer testified that Davis possessed a cell phone when he was arrested, and although law enforcement searched Davis's cell phone, technical limitation prevented them from accessing any data. The undercover officer testified that she could not confirm that the designated number she received the text messages from belonged to Davis, and the text messages in evidence were extracted from her phone number, which could be found in the sexual advertisement posted on a known prostitution website.

The video evidence confirms that the undercover officer and Davis were the only people in the hotel room. The undercover officer explained that when she acted like a person willing to engage in sex for money, Davis claimed to be a music promoter, requested to be her pimp, and offered to help promote her so she could increase her opportunities to provide sexual services. The undercover officer testified Davis stated he could help her with her advertisements and communications, filter out people who did not intend to pay, and provide opportunities in his music production circles to meet clients. The undercover officer explained that Davis did not offer her money for sex, because in her experience, pimps do not pay for sex. The undercover officer testified that although Davis

5

mentioned he wanted a romantic relationship and they did not discuss prostitution directly, it was clear to her that Davis committed the offense of promotion of prostitution by trying to pimp her out for sexual intercourse. The video evidence shows Davis stated he would help the undercover officer bring clients in and earn more than $1000 per day, and in return he wanted a romantic partnership and a half cut.

At the close of the State's evidence, Davis moved for an instructed verdict of not guilty, which the trial court denied. A jury found Davis guilty of promotion of prostitution. The trial court conducted a punishment hearing, during which Davis did not testify. Despite Davis's Application for Community Supervision from the Jury, Davis's counsel failed to present evidence showing that he had never been convicted of a felony. That said, by agreement with the defense, the State introduced Davis's criminal history records which only included a misdemeanor conviction for possession of marijuana. After the defense rested, defense counsel advised the trial court that Davis had just told her he wanted to speak to the jury, but the trial court explained that since the defense closed and rested, they were past the point of testifying during punishment. That said, after Davis explained to the trial judge that he considered testifying but only wanted to "talk" to the jury about punishment,

Davis discussed the matter with defense counsel and told the trial court, "I won't testify."

During closing argument, defense counsel argued that the jury should place Davis on probation. The State explained that Davis filed an application for probation stating that he did not have a felony conviction and that the jury could consider probation. The jury charge included a community supervision instruction, stating that the jury may consider community supervision since Davis filed an affidavit stating that he has never been convicted of a felony and requesting the suspension of his prison time and placement on community supervision. The jury assessed Davis's punishment at four years of confinement and did not recommend community supervision.

Davis's trial counsel filed a Motion for New Trial and Motion in Arrest of Judgment, arguing the verdict is contrary to the law and evidence and the trial court should grant a new trial in the interests of justice. The trial court denied the motion. Davis's appellate counsel filed a Motion for Leave of Court to File Motion for New Trial on Punishment because it was filed more than thirty days after the judgment was entered, and counsel argued that leave was requested so that the trial court can consider Davis's Motion for New Trial on Punishment, which alleged ineffective assistance of counsel. The Motion for New Trial on Punishment alleged ineffective

assistance of counsel based on trial counsel's failure to properly advise him about the significance of presenting evidence when requesting community supervision eligibility, present evidence to show his eligibility during punishment, and to present mitigation evidence.

The Motion for New Trial on Punishment included Davis's appellate counsel's affidavit, in which he averred that Davis told him that his trial counsel

> did not properly advise him on the law/procedure to become eligible for community supervision and did not advise him on the type of evidence necessary to convince a jury to recommend community supervision and did not advise him on the type of evidence necessary to convince a jury to recommend community supervision.

Davis's appellate counsel further explained that if

> Davis would have known that he would not be eligible for community supervision without presenting evidence to that fact that he had never been convicted of a felony, he or his mother . . . would have testified to that fact and also testify to evidence to support reasons to give community supervision.

The motion also included Davis's mother's affidavit, in which she averred that Davis "has no felony convictions, he has one misdemeanor conviction for possession of marijuana."

The State filed an Objection to the Motion for New Trial on Punishment, arguing the trial court should deny Davis's second Motion for New Trial raising a new claim for ineffective assistance because it was untimely and not filed within

8

thirty days after sentence was imposed. The trial court denied Davis's Motion for New Trial on Punishment.

## ANALYSIS

In issue one, Davis complains the evidence is legally insufficient to support his conviction for promotion of prostitution because there was no evidence that a third person was involved in the transaction. *See* Tex. Penal Code Ann. § 43.03(a)(2). In issue two, Davis argues the trial court erred by denying his Motion for Instructed Verdict. We address Davis's first two issues together as we treat a complaint about the denial of a motion for instructed verdict "as a challenge to the legal sufficiency of the evidence." *See Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996) (citation omitted); *Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990) ("A challenge to the trial judge's ruling on a motion for an instructed verdict is in actuality a challenge to the sufficiency of the evidence to support the conviction."); *Andrus v. State*, 495 S.W.3d 300, 304 (Tex. App.— Beaumont 2016, no pet.) (citation omitted).

We review complaints of legal insufficiency under the standard in *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). *See Fernandez v. State*, 479 S.W.3d 835, 837 (Tex. Crim. App. 2016). Under *Jackson*, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original) (citation omitted); *see Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). We defer to the jury's responsibility to resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from the evidence. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citation omitted). We presume the jury resolved any conflicts in the testimony in favor of the verdict. *See Brooks*, 323 S.W.3d at 899 n.13. We treat direct and circumstantial evidence equally and "consider the combined and cumulative force of the evidence" viewed in the light most favorable to the jury's verdict. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citation omitted).

A person commits the offense of promotion of prostitution if, while "acting other than as a prostitute receiving compensation for personally rendered prostitution services, he or she knowingly . . . solicits another to engage in sexual conduct with another person for compensation." Tex. Penal Code Ann. § 43.03(a)(2). Davis complains the evidence is legally insufficient to support his conviction for promotion of prostitution because there was no evidence that an identified third person was involved in the transaction. *See* Tex. Penal Code Ann. § 43.03(a)(2).

10

Proof of an identified third person who was actually involved in the transaction is not a required element under the statute. *Garrett v. State*, 566 S.W.2d 605, 608 (Tex. Crim. App. 1978). The evidence shows Davis solicited the undercover officer to engage in sexual conduct with potential clients (another person) that the appellant described to the undercover officer, and appellant expressly described how he would help her procure clients in exchange for a half cut of the compensation from the prostitution. After viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. There was legally sufficient evidence that Davis committed the offense of promotion of prostitution because the evidence established that "while acting other than as a prostitute receiving compensation for personally rendered prostitution services, he [] knowingly . . . solicit[ed] [the undercover officer] to engage in sexual conduct with another person for compensation." Tex. Penal Code Ann. § 43.03(a)(2). After reviewing all the evidence, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Davis was guilty of promotion of prostitution. *See* Tex. Penal Code Ann. § 43.03(a)(2); *Jackson*, 443 U.S. at 319; *Garrett*, 566 S.W.2d at 608; *see also Hsu v. State*, No. 14-03-01105-CR, 2004 WL 1381041, at *4 (Tex. App.—Houston [14th Dist.] June 22, 2004, pet. ref'd) (mem. op., not designated for

11

pub.). Accordingly, the evidence is sufficient to support the trial court's decision denying Davis's request for an instructed verdict. *See Williams*, 937 S.W.2d at 482. We overrule issues one and two.

In issue three, Davis argues his trial counsel was ineffective because the trial counsel failed to properly advise him on the requirements for the jury to recommend community supervision, and she failed to present evidence to the jury showing that he was eligible for probation because he was not a convicted felon. The State argues that Davis's Motion for New Trial on Punishment alleging ineffective assistance of counsel was untimely because it was not filed within thirty days after sentence was imposed, and the trial court could not consider the Motion or any evidence attached to it. *See State v. Arizmendi*, 519 S.W.3d 143, 151 (Tex. Crim. App. 2017) (stating a trial court is barred from considering a ground raised outside the thirty-day period); *Hamilton v. State*, No. 09-96-016-CR, 1996 WL 563832, at *5 (Tex. App.—Beaumont Oct. 2, 1996, pet. ref'd) (mem. op., not designated for pub.) (citation omitted) (explaining untimely amended motions for new trial are a nullity and cannot form the basis of error on appeal and evidence submitted in support of the untimely motion may not be considered on appeal). Since Davis's Motion for New Trial on Punishment was untimely filed, we cannot consider his ineffective assistance claim

12

or the attached supporting affidavits. *See Hamilton*, 1996 WL 563832, at *5. We overrule issue three.

## CONCLUSION

Having overruled each of Davis's issues, we affirm the trial court's judgment.

AFFIRMED.

W. SCOTT GOLEMON
Chief Justice

Submitted on December 22, 2023
Opinion Delivered February 14, 2024
Do Not Publish

Before Golemon, C.J., Johnson and Wright, JJ.