

## NUMBERS
## 13-09-00477-CR
## 13-09-00478-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

MAURICIO RODRIGUEZ CELIS,                           Appellant,

## v.

THE STATE OF TEXAS,                                   Appellee.

**On appeal from the 148th District Court
of Nueces County, Texas.**

# OPINION

**Before Chief Justice Valdez and Justices Garza and Perkes
Opinion by Chief Justice Valdez**

Appellant, Mauricio Rodriguez Celis, was convicted of fourteen counts of falsely holding himself out as a lawyer. *See* TEX. PENAL CODE ANN. § 38.122(a) (West 2003). By eighteen issues, appellant seeks to reverse his conviction based on challenges to: (1) the legal sufficiency of the evidence; (2) the denial of his motion for new trial based

on judicial bias; (3) the constitutionality of section 38.122 of the Texas Penal Code; (4) the jury charge; and (5) the admission and exclusion of evidence. For the reasons set forth below, we overrule appellant's issues and affirm the judgments of the trial court.

## I. BACKGROUND

By two indictments,[1] appellant was charged with 23 counts of falsely holding himself out as a lawyer in violation of section 38.122(a) of the Texas Penal Code. *See id.* A jury trial was held in the 148th Judicial District Court of Nueces County with Judge Mark Luitjen presiding by appointment. At trial, the State offered the testimony of 20 witnesses and over 100 exhibits, including appellant's sworn testimony in a civil case. In presenting his defense, appellant relied upon many of the same witnesses and exhibits and, in addition, offered the testimony of three other witnesses.

The evidence established that appellant held himself out as a lawyer with CGT Law Group International, LLP, a law firm located in Nueces County, Texas founded by appellant and others. Appellant has not been admitted to the practice of law in Texas. Although appellant described himself as a lawyer from Mexico, he is not certified as a foreign legal consultant. According to the testimony of Josh Hensley, the Director of Eligibility and Examination of the Texas Board of Law Examiners, a person who has a certificate as a foreign legal consultant is considered to be affiliated with the State Bar of Texas, and is allowed to have a law practice limited to advising clients about the laws of Mexico while maintaining an office in Texas. The Texas Board of Law Examiners requires attorneys from Mexico to produce a "cedula" as evidence of the person's ability

---

[1] In trial court cause no. 07-CR-4046-E, appellant was indicted for seven (7) counts of falsely holding himself out as a lawyer. *See* TEX. PENAL CODE ANN. § 38.122(a). In trial court cause no. 08-CR-1365-E, appellant was indicted for sixteen (16) counts of falsely holding himself out as a lawyer. *See id.*

2

to practice law in Mexico, as well as a certificate from Mexico's Ministry of Education stating that the person is currently meeting the requirement to be a lawyer in Mexico.

The evidence, including appellant's sworn testimony, established that appellant does not have a cedula. Nevertheless, when asked, "[A]re you a nonlawyer or are you a lawyer?" appellant testified, "I am a lawyer in Mexico. . . . I'm considered a lawyer in Mexico." According to appellant, "The Constitution does not require that you be a licensed attorney or have a diploma in law to practice law in Mexico." Appellant testified that although he has a diploma in judicial sciences, it has never been registered with the Ministry of Education, which is required to obtain a cedula.

Appellant called two witnesses to testify about the requirements to practice law in Mexico. The first witness, Jose Martin de Valenzuela Hernandez, an attorney with appellant's law firm (who has a cedula), testified that it is not necessary to go to law school and obtain a law license to practice law in Mexico. Hernandez testified that "[t]he cedula is not a license." According to Hernandez, "that's what the law in Mexico is . . . . Anybody who goes and wants to practice in the four areas of amparo, employment law, agrarian law, and criminal law can do that. Anybody here can do that. And they can go to Mexico and try it." On cross-examination, the State asked Hernandez, "So, every single Mexican citizen is licensed to practice law?" to which Hernandez replied, "As long as they're not liars and they're not mentally incompetent . . . . The law establishes it as such for everyone." The State also asked Hernandez, "Under this particular statute, everybody in Mexico is authorized to practice law, is that right?" and Hernandez answered, "That's correct." Later, Hernandez testified that appellant is a "licenciado," a term which he described as a synonym for attorney, based on a law that applies "to

3

every single Mexican citizen." The State asked Hernandez, "So every Mexican citizen is a licenciado?" to which Hernandez replied, "If you want to look at it that way, you have a license under the constitution and laws, yes."

The second witness called by appellant, Hector Rene Valdez Diaz (who also has a cedula), gave testimony consistent with Hernandez's testimony. Diaz is a personal secretary for the Chief Justice of the Supreme Court of Justice of the State of Chihuahua. On cross-examination, the State asked Diaz, "So what you're telling this jury is that all Mexican citizens who are of legal age and of sound mind are licensed to practice law in Mexico?" to which Diaz replied, "In these areas [referring to amparo, employment law, agrarian law, and criminal law], yes."

The jury returned a verdict of guilty on 14 counts: (1) stating on a business card that he was licensed in Mexico (count 2 in Cause No. 07-CR-4046-E, submitted to the jury as count 1); (2) being described on a business webpage as an attorney at law and a licensed attorney in Mexico (count 5 in Cause No. 07-CR-4046-E, submitted to the jury as count 4); (3) signing a legal document in a place designated for an attorney's signature (count 6 in Cause No. 07-CR-4046-E, submitted to jury as count 5); (4) stating that he was a lawyer, that he had been admitted to the bar in the year 2000, that he had been in the full time practice of law for 6 years and that he was a member in good standing of the state bar of Mexico, in an insured supplement application for lawyer's professional liability insurance (count 2 in Cause No. 08-CR-1365-E); (5) stating that he was a lawyer, that he had been admitted to the bar in the year 2000, that he had been in the full time practice of law for 7 years and that he was a member in good standing of the state bar of Mexico, in an insured supplement application for lawyer's professional

4

liability insurance (count 3 in Cause No. 08-CR-1365-E); (6) accepting a check in the amount of $84,286.15 as attorney's fees (count 6 in Cause No. 08-CR-1365-E); (7) accepting a check in the amount of $100,020.83 as attorney's fees (count 7 in Cause No. 08-CR-1365-E); (8) accepting a check in the amount of $80,000.00 as attorney's fees (count 8 in Cause No. 08-CR-1365-E); (9) accepting a check in the amount of $286,000.00 as attorney's fees (count 9 in Cause No. 08-CR-1365-E); (10) accepting a check in the amount of $27,000.00 as attorney's fees (count 10 in Cause No. 08-CR-1365-E); (11) accepting a check in the amount of $122,500.00 as attorney's fees (count 11 in Cause No. 08-CR-1365-E); (12) accepting a check in the amount of $157,500.00 as attorney's fees (count 12 in Cause No. 08-CR-1365-E); (13) accepting a check in the amount of $440,000.00 as attorney's fees (count 13 in Cause No. 08-CR-1365-E); and (14) accepting a check in the amount of $37,789.53 as attorney's fees (count 14 in Cause No. 08-CR-1365-E).

The jury assessed a ten-year prison sentence and $10,000 fine as punishment for each offense. The jury recommended that the prison sentence be suspended and that appellant be placed on community supervision. Judge Luitjen did not sentence appellant at that time, but instead ordered the preparation of a presentence report.

Subsequently, on March 26, 2009, Judge Luitjen reconvened the proceedings to consider, among other things, the State's request for restitution. Although appellant had not yet been sentenced, the court certified appellant's right of appeal and set bond at $700,000.

On April 24, 2009, before sentencing had taken place, appellant filed a motion to recuse Judge Luitjen based on allegations of judicial bias involving the judge's

5

courtroom behavior. In support of the motion, appellant attached affidavits from seven of the jurors who served on the case. In their affidavits, each of the jurors expressed an opinion that based on what he or she had observed during the trial, Judge Luitjen was biased against appellant and his counsel. The same affidavits were also attached in support of appellant's motion for new trial, which was filed at the same time as the motion to recuse. Appellant's motion for new trial requested relief based on structural error involving the same allegations of judicial bias made in the motion to recuse.

On May 15, 2009, Judge Manuel Banales, then the presiding judge of the Fifth Administrative Judicial Region of Texas, held a hearing on appellant's motion to recuse. Six of the seven jurors whose affidavits had been relied upon by appellant were called as witnesses at the hearing and gave testimony verifying the statements made in the affidavits. At the conclusion of the hearing, Judge Banales granted the motion to recuse and assigned himself to the case. Subsequently, Judge Banales accepted the jury's assessment of punishment on all fourteen counts, suspended the prison term, imposed community supervision for a term of ten years, and assessed a single fine in the amount of $10,000.[2]

On June 24, 2009, the State filed a motion to recuse Judge Banales. Chief Justice Wallace Jefferson of the Texas Supreme Court appointed the Honorable Louis Sterns to preside over the motion to recuse. After holding an evidentiary hearing, Judge Sterns granted the motion to recuse and the Honorable Sid Harle was appointed to preside over the case.

---

[2] Although appellant's motion for new trial was pending, Judge Banales proceeded to sentence appellant without ruling on the motion.

6

On August 3, 2009, a hearing was held on appellant's motion for new trial. At the hearing, appellant argued that he was entitled to a new trial based on structural error involving judicial bias. Appellant offered the juror affidavits and a transcript of the recusal hearing as evidence. In opposing the motion, the State argued that the trial court had no authority to grant a new trial based on judicial bias and that, in any event, appellant had not established judicial bias. The trial court denied the motion for new trial. This appeal ensued.

## II. LEGAL SUFFICIENCY OF THE EVIDENCE

In issues sixteen through eighteen, appellant challenges the legal sufficiency of the evidence to support his conviction on all fourteen counts.[3]

### A. Standard of Review and Applicable Law

In reviewing the legal sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hampton v. State*, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005). The sufficiency of the evidence is measured by the elements of the hypothetically correct jury charge for the case. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *See Gollihar v. State*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); *Malik*, 953 S.W.2d at 240. The law as authorized by the indictment means the statutory elements

---

[3] We address appellant's legal sufficiency issues out of the order in which they are presented in appellant's brief because, if sustained, they would entitle appellant to an acquittal, thereby rendering his other issues moot. *See* TEX. R. APP. P. 47.1.

of the charged offense as modified by the charging instrument. *See Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

Section 38.122(a) of the Texas Penal Code states as follows:

A person commits an offense if, with intent to obtain an economic benefit for himself or herself, the person holds himself or herself out as a lawyer, unless he or she is currently licensed to practice law in this state, another state, or a foreign country and is in good standing with the State Bar of Texas and the state bar or licensing authority of any and all other states and foreign countries where licensed.

TEX. PENAL CODE ANN. § 38.122(a). In this case, the elements of the hypothetically correct jury charge are as follows: (1) a person held himself out as a lawyer with intent to obtain an economic benefit for himself; and (2) the person was not (a) currently licensed to practice law in this state, another state, or a foreign country, (b) in good standing with the State Bar of Texas, or (c) in good standing with the state bar or licensing authority of any and all other states and foreign countries where licensed. *See id.*

## B. Licensure in Another State

In his sixteenth issue, appellant argues that he is entitled to a judgment of acquittal on all fourteen counts because the evidence is legally insufficient to prove that he was not licensed in another state. Appellant assumes, incorrectly, that the lack of licensure in another state is an essential element of the offense of falsely holding oneself out as a lawyer. *See* TEX. PENAL CODE ANN. § 1.07(22) (West Supp. 2010) ("'Element of offense' means: (A) the forbidden conduct; (B) the required culpability; (C) any required result; and (D) the negation of any exception to the offense."). Appellant suggests that licensure in another state is an exception to the offense that must be negated, but the statute does not label licensure in another state as an exception to the

8

offense. *See* TEX. PENAL CODE ANN. § 2.02(a) (West 2003) ("An exception to an offense in this code is so labeled by the phrase: 'It is an exception to the application of. . . .'").

In other cases involving this offense, the legal sufficiency of the evidence has been upheld without consideration of whether the defendant was licensed in another state and even where the evidence showed the defendant was licensed in another state. *See Satterwhite v. State*, 979 S.W.2d 626, 628-29 (Tex. Crim. App. 1998) (affirming conviction of Texas attorney based on lack of "good standing" with State Bar of Texas); *Ellis v. State*, No. 14-99-00511-CR, 1999 Tex. App. LEXIS 7464 **3-4 (Tex. App.—Houston [14th Dist.] Oct. 7, 1999, pet. ref'd) (not designated for publication) ("The record in this case clearly shows that Appellant has been disbarred by the State Bar of Texas; therefore, he is not in 'good standing' with the State Bar of Texas. It would be absurd to suggest that a person who has been disbarred from practicing law in Texas could rely on a law license issued by another state as a means to circumvent the disbarment and continue to hold himself or herself out as a lawyer in Texas.").

Moreover, we disagree with appellant's assertion that there was no evidence that he was not licensed in another state. Appellant was asked, "[A]re you a nonlawyer or are you a lawyer?" to which appellant replied, "I am a lawyer in Mexico. . . . I'm considered a lawyer in Mexico." Any rational trier of fact could have found that appellant was not licensed in another state based on his answer, which necessarily implied that Mexico is the only place where he claims to be licensed to practice law. Accordingly, we conclude that there is no merit to appellant's sixteenth issue, and it is therefore overruled.

**C. Venue**

9

In his seventeenth issue, appellant contends that the evidence was legally insufficient to prove venue in Nueces County as to counts 2 and 3 of Cause No. 08-CR-1365-E, which involved statements made in an insured supplement application for lawyer's professional malpractice insurance. Appellant argues that the State failed to offer any evidence that he was physically located in Nueces County when he signed the insurance applications.

Venue is not a "criminative fact" and thus, not a constituent element of the offense. *Fairfield v. State*, 610 S.W.2d 771, 779 (Tex. Crim. App. 1981). Therefore, it need not be proven beyond a reasonable doubt, but rather, by a preponderance of evidence. *Id.*; *see also* TEX. CODE CRIM. PROC. ANN. art. 13.17 (West 2005) ("To sustain the allegation of venue, it shall only be necessary to prove by the preponderance of the evidence that by reason of the facts in the case, the county where such prosecution is carried on has venue."). Where, as here, there is not a special venue statute applicable to the charged offense, the proper venue for the prosecution is the county in which the offense was committed. TEX. CODE CRIM. PROC. ANN. art. 13.18 (West 2005).

In this case, the evidence established that appellant held himself out as a lawyer with the law firm CGT Law Group International, LLP. The evidence also established that appellant used the firm's office in Nueces County as his principal place of business for conducting these activities. The firm's address in Nueces County is the only address listed on appellant's business card. Although the firm's letterhead also lists an address in Washington D.C., Doug Gwyther, an attorney with the firm, testified that appellant did not have a permanent office in Washington D.C. and went there only a "couple of times." Based on the foregoing circumstantial evidence concerning the extent to which

10

appellant conducted his business activities in Nueces County to the exclusion of other locations, a rational trier of fact could find by a preponderance of the evidence that appellant was in Nueces County when he signed the applications for malpractice insurance. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("Direct and circumstantial evidence are treated equally: Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt."); *Taylor v. State*, 684 S.W.2d 682, 684 (Tex. Crim. App. 1984) ("Direct evidence directly demonstrates the ultimate fact to be proven, whereas circumstantial evidence is direct proof of a secondary fact which, by logical inference, demonstrates the ultimate fact to be proven."). Appellant's seventeenth issue is overruled.

## D. The "Check" Counts

In his eighteenth issue, appellant argues that he is entitled to an acquittal on counts 6 through 14 in Cause No. 08-CR-1365-E because evidence that he accepted checks for attorney's fees from the Owen & Associates law firm is not legally sufficient to prove that he held himself out as a lawyer. We disagree. The manner or means by which a person holds himself out as a lawyer is not material and, therefore, would not be included in a hypothetically correct charge. *Rodriguez v. State*, 336 S.W.3d 294, 299 (Tex. App.—San Antonio 2010, pet. ref'd).

In this case, the evidence established that appellant held himself out as a lawyer from Mexico in order to engage in fee-sharing activities with other lawyers. At trial, the witnesses for the State included James Ehler, the Deputy Chief Counsel for the Chief Disciplinary Counsel's Office of the State Bar of Texas, who testified that when a person

11

accepts a check for attorney's fees, he is making a representation that he is a licensed lawyer in the state where he is accepting the fee. Another witness called at trial was Lee Trujillo, the accountant who prepared the checks for the Owen & Associates law firm. The memo line on each check (with one exception) stated that the payment was for attorney's fees and provided the last name of the client whose case had been settled. Financial statements prepared by Trujillo were offered as evidence to establish the fee-sharing arrangement that resulted in the check payments to appellant for attorney's fees. Trujillo testified that he believed appellant was an attorney when the fee-sharing activities were taking place. Based on this testimony and evidence, any rational trier of fact could have found that appellant held himself out as a lawyer as alleged in each of the counts.

Appellant's eighteenth issue is overruled.

### III. MOTION FOR NEW TRIAL

Issues one through six are argued together in appellant's brief.[4] In issues one and two, appellant complains that Judge Luitjen was biased against him in violation of the constitutional guarantees of due process of law. In issues three and four, appellant complains that Judge Luitjen's bias deprived him of his rights to a reliable jury verdict and effective assistance of counsel. In issue five, appellant complains that Judge Luitjen's bias violated article 38.05 of the Texas Code of Criminal Procedure. See TEX. CODE CRIM. PROC. ANN. art. 38.05 (West 1979). In issue six, appellant argues that the

---

[4] We will address issues one through six together because appellant has not argued them as separate issues and because issues one through five are subsidiary issues fairly included in issue six. See TEX. R. APP. P. 38.1(f) ("The statement of an issue will be treated as covering every subsidiary question that is fairly included.").

trial court abused its discretion in denying his motion for new trial, which sought relief based on the allegations of judicial bias raised in issues one through five.

## A. Standard of Review

We review the denial of a motion for new trial for abuse of discretion. *See Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). We view the evidence in the light most favorable to the trial court's ruling and uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Id.* We do not substitute our judgment for that of the trial court, but rather we decide whether the trial court's decision was arbitrary or unreasonable. *Id.* Thus, a trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Id.*

## B. Judicial Bias

In issues one and two, appellant argues that he is entitled to a new trial because Judge Luitjen was biased against him in violation of the U.S. Constitution's guarantees of due process of law.[5]

### 1. Applicable Law

The Due Process Clause guarantees a defendant a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of his particular case. *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). The Due Process Clause has been implemented by objective standards that do not require proof of actual bias. *Caperton v. A.T. Massey Coal Co., Inc.*, 129 S. Ct. 2252, 2263 (2009). In pursuit

---

[5] Although appellant's statement of the issues presented also refers to violations of his rights under the Constitution of the State of Texas, his brief does not include a clear and concise argument for the contentions made with appropriate citations to authorities. *See* TEX. R. APP. P. 38.1(i). Accordingly, we will not address those contentions.

13

of this end, various situations have been identified in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable. *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). A judge is constitutionally unacceptable when: (1) the judge has a direct personal, substantial, and pecuniary interest in the outcome of the case; (2) the judge has been the target of personal abuse or criticism from the party before him; or (3) the judge has the dual role of investigating and adjudicating disputes and complaints. *Bigby v. Dretke*, 402 F.3d 551, 559 (5th Cir. 2005).

In addition, the United States Supreme Court has noted that "predispositions developed during the course of a trial will sometimes (albeit rarely) suffice" to establish judicial bias. *Liteky v. United States*, 510 U.S. 540, 554 (1994). "[O]pinions formed by the judge on the basis of facts introduced or events occurring during the course of the current proceedings, or prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* at 555. "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id.* "They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.* "Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even . . . judges, sometimes display." *Id.* at 555-56. "A judge's ordinary efforts at courtroom administration—even a stern and short-

14

tempered judge's ordinary efforts at courtroom administration—remain immune." *Id.* at 556.

**2. Discussion**

Applying the principles set forth above to the facts of this case, we note that appellant has not alleged that Judge Luitjen was constitutionally unacceptable because he has: (1) a direct personal, substantial, and pecuniary interest in the outcome of the case; (2) been the target of personal abuse or criticism from the party before him; or (3) the dual role of investigating and adjudicating disputes and complaints. *See Bigby*, 402 F.3d at 559. Appellant's challenge to Judge Luitjen is based solely on allegations that the judge displayed bias in the courtroom. Specifically, appellant argues that Judge Luitjen displayed bias through "any number of nuances from the judge's tone of voice, demeanor, facial expressions, attitude, conduct and words, none of which in and of themselves were necessarily independently objectionable, let alone reflected in the cold appellate record." APPELLANT'S BRIEF at 15-16, n. 61. Appellant has not alleged that the bias arose from or was influenced by an extrajudicial source. *See Liteky*, 510 U.S. at 554-55. Thus, under these circumstances, appellant was required to prove that the judge's behavior "reveal[ed] such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.* at 555. Appellant has not met this burden.

As a preliminary matter, we are confronted by the inherent limitations of the appellate record, which as appellant correctly observes, ordinarily does not reflect the trial judge's tone of voice, demeanor, and facial expressions. While in most cases there might be no reason to build a record of such things, it is certainly possible for counsel to make an objection to the inappropriateness of a judge's tone of voice, demeanor, or

15

facial expression.  *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992) ("As regards specificity [of an objection], all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.").  Furthermore, in an extreme case such as this, where these subtleties are asserted as grounds for a new trial, a timely and specific objection would have alerted the trial court to the issue, created a record of what took place, and ensured the issue was preserved for appellate review.  *See* TEX. R. APP. P. 33.1(a)(1) ("As prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion . . . .").

According to appellant, there was no need to object because none of the allegedly improper aspects of the judge's courtroom conduct—i.e., the judge's tone of voice, demeanor, and facial expressions—were independently objectionable. APPELLANT'S BRIEF at 15-16, n. 61.  Thus, while appellant maintains that Judge Luitjen did nothing inappropriate to warrant even a single objection, appellant argues that the various nuances in the judge's courtroom behavior worked together to create a "synergistic effect" that deprived appellant of due process of law.  Furthermore, appellant argues that because the plurality opinion in *Blue* held that "the comments of the trial judge, which tainted appellant's presumption of innocence in front of the venire, were fundamental error of constitutional dimension and required no objection," it was not necessary for him to make any objections to preserve this issue for appeal.  *Blue v. State*, 41 S.W.3d 129, 132 (Tex. Crim. App. 2000) (plurality op.).

16

In *Blue*, the trial judge made specific comments that "imparted information to the venire that tainted the presumption of innocence." *Id.* at 132. The jury learned "at the outset that the defendant seriously considered entering into a plea agreement . . . [and] hear[d] the judge say that he would have preferred that the defendant plead guilty." *Id.* The judge "also blamed [the defendant] for the delay that was costing the venire time and money." *Id.* at 138 (Keasler, J., concurring). The Texas Court of Criminal Appeals held that the judge's comments "vitiated the presumption of innocence before the venire, adversely affecting appellant's right to a fair trial." *Id.* at 132. Specifically, by disclosing that the defendant had given serious consideration to a plea agreement, the judge's comments precluded the jury from beginning with a presumption that the defendant was innocent. *Id.* In addition, by telling the jury that "he would have preferred that the defendant plead guilty," the judge provided a basis on which a juror "might assume that the judge knows something about the guilt of the defendant that the juror does not. Surely, no trial judge would want an innocent man to plead guilty, no matter how much delay and expense he might be causing." *Id.*

Unlike *Blue*, this is not one of the "few cases where the judge's statements when viewed objectively are so egregious as to render him biased." *Blue*, 41 S.W.3d at 138 (Keasler, J., concurring). In fact, appellant has not directed our attention to any comment by the trial judge that allegedly tainted the presumption of innocence. While the record in *Blue* included the judge's statements, there is no comparable record in this case for the Court to conduct an objective review. As appellant concedes in his brief, "at least the judge's words (in *Blue*) were on the record and capable of being raised on appeal, whereas Judge Luitjen's actions, tone of voice, demeanor, facial expressions,

17

attitude and conduct during trial are not reflected by the cold appellate record . . . ."
APPELLANT'S BRIEF at 20 n.71.

At the hearing on appellant's motion for new trial, appellant did not call any witnesses, but he did present evidence that included affidavits from seven of the jurors who served on the case. *See Smith v. State*, 286 S.W.3d 333, 338 (Tex. Crim. App. 2009) ("[T]he opportunity to prepare a record for appellate review makes a hearing on a motion for new trial a critical stage. . . . "). In the affidavits, each of the jurors expressed an opinion that based on what he or she had observed in the courtroom, the trial judge was biased against appellant and his counsel. In addition to the "nuances" previously discussed, such as the judge's tone of voice and facial expressions, the juror affidavits noted that the judge "seemed to rule against the defense team and for the prosecution team when ruling on all of the objections," "seemed to rush the defense," "seemed as if he . . . was not listening when the defense put on some of their witnesses," and "appeared bothered when the defense's witnesses from Mexico testified because of their lack of knowledge of the English language and the translation problems that this caused." While appellant acknowledges "the absence of Texas criminal cases directly on point," he maintains that the juror affidavits are sufficient to prove beyond a reasonable doubt that Judge Luitjen was biased. APPELLANT'S BRIEF at 19.[6] We disagree.

---

[6] On appeal, appellant argues that because the State did not offer any contrary evidence at the hearing, the trial court was required to accept the juror affidavits and grant the motion for new trial. We disagree. At a hearing on a motion for new trial, the trial court has the discretion to accept or reject any part of a witness's testimony. *See Beck v. State*, 573 S.W.2d 786, 791 (Tex. Crim. App. 1978) (noting that, at a motion for new trial hearing, the trial judge has "the right to accept or reject any part of" a witness's testimony). Therefore, we reject appellant's contention that the trial court had no discretion to disregard the juror affidavits because the State failed to offer contrary evidence at the hearing. *See id.*

18

Bias by an adjudicator is not lightly established. *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1052 (5th Cir. 1997); *United States v. Guglielmini*, 384 F.2d 602, 605 (2d Cir. 1967) ("Few claims are more difficult to resolve than the claim that the trial judge, presiding over a jury trial, has thrown his weight in favor of one side to such an extent that it cannot be said that the trial has been a fair one."). Although seven jurors stated their opinion that Judge Luitjen was biased, none explained what he or she understood "bias" to mean. That each of the jurors shared the same understanding remains an open question; however, it is clear that the jurors did not share a correct understanding.

In their affidavits, each of the jurors articulated one or more invalid reasons for concluding that Judge Luitjen was biased. For instance, many of the jurors offered Judge Luitjen's evidentiary rulings as a reason for believing that he was biased against appellant, but judicial rulings almost never constitute a valid basis for a bias or partiality challenge. *See Liteky*, 510 U.S. at 555; *Sommers v. Concepcion*, 20 S.W.3d 27, 41 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ("A party's remedy for unfair rulings is to assign error regarding the adverse rulings."). Another inappropriate reason cited by many of the jurors was that Judge Luitjen "seemed to rush the defense" and "seemed as if he . . . was not listening" or "appeared bothered when the defense's witnesses from Mexico were testifying." These observations pertain to Judge Luitjen's efforts at courtroom administration, which are not a valid basis for finding judicial bias, even if they displayed or included "expressions of impatience, dissatisfaction, annoyance, and even anger." *Liteky*, 510 U.S. at 555-56.

After eliminating from consideration the invalid grounds for finding judicial bias in the juror affidavits, it is unclear whether any of the jurors would conclude that Judge Luitjen was biased. If so, any such conclusion would rest on the same subtleties in the judge's courtroom behavior to which appellant failed to object at trial. It is well established that subtleties and nuances in a judge's behavior—even those manifesting animosity—are insufficient to establish bias. *Liteky*, 510 U.S. at 556 n.3 ("When intrajudicial behavior is at issue, manifestations of animosity must be much more than subtle to establish bias."). Accordingly, appellant's first and second issues are overruled.

**E. Rights to a Reliable Jury Verdict and Effective Assistance of Counsel**

In issues three and four, appellant argues that Judge Luitjen's bias violated his rights to a reliable jury verdict and effective assistance of counsel. In addressing appellant's first and second issues, we have concluded that appellant has failed to establish judicial bias. Accordingly, because appellant's third and fourth issues are premised on the existence of judicial bias, those issues are overruled.

**F. Violation of Article 38.05 of the Texas Code of Criminal Procedure**

In issue five, appellant argues that Judge Luitjen's bias violated article 38.05 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.05 ("In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible. . . . [N]or shall [a judge], at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.").

As noted above, appellant has not complained about any specific remark that the judge made that was calculated to convey to the jury his opinion of the case. Nor has appellant identified any instances in which, in ruling on the admissibility of evidence, the judge discussed or commented on the weight of the evidence or its bearing in the case. *See Most Worshipful Prince Hall Grand Lodge v. Jackson*, 732 S.W.2d 407, 412 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (en banc) ("This court is not required to search the record for evidence supporting a litigant's position under particular points of error . . . ."). Furthermore, there is no indication that appellant objected to any improper comments that the trial judge may have made. *See Smith v. State*, 595 S.W.2d 120, 124 (Tex. Crim. App. 1980) ("Failure to object to this alleged comment preserves nothing for review.").

On this record, we have no basis to conclude that the trial judge did anything other than carry out its duties involving courtroom administration and ruling upon the admissibility of evidence. *See Smith*, 595 S.W.2d at 123-24 ("The court merely carried out its duty in ruling upon appellant's objection and did not embellish the ruling with an unwarranted comment."); *Simon v. State*, 203 S.W.3d 581, 590 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ("The trial court improperly comments on the weight of the evidence if it makes a statement that implies approval of the State's argument, indicates disbelief in the defense's position, or diminishes the credibility of the defense's approach to the case."). There is no basis for finding reversible error. *See Becknell v. State*, 720 S.W.2d 526, 531 (Tex. Crim. App. 1986) ("To constitute reversible error, the trial court's comment to the jury must be such that it is reasonably calculated to benefit

21

the State or to prejudice the rights of the defendant."). Accordingly, appellant's fifth issue is overruled.

## G. Conclusion

In issue six, appellant contends that the trial court abused its discretion in denying his motion for new trial based on the allegations of judicial bias discussed in issues one through five. We have overruled issues one through five because appellant has not established judicial bias. Accordingly, we conclude that the trial court did not abuse its discretion in denying appellant's motion for new trial. Appellant's sixth issue is overruled.

## IV. JURY CHARGE ERROR

In issues seven through nine, appellant complains of errors in the jury charge involving the culpable mental state required in the application paragraphs, the omission of a requested instruction on the defensive issue of mistake of fact, and the inclusion of "foreign legal consultant" in the charge definition of "good standing with the State Bar of Texas."

### A. Standard of Review and Applicable Law

Article 36.14 of the Texas Code of Criminal Procedure requires that a trial court provide a jury charge "distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. art 36.14 (West 2007). The charge must contain an accurate statement of the law and must set out all the essential elements of the offense. *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995). A jury charge is fundamentally defective if it omits an essential element of the offense or authorizes conviction on a set of facts that

22

do not constitute an offense. *Zuckerman v. State*, 591 S.W.2d 495, 496 (Tex. Crim. App. 1979).

The standards for appellate review of error in the court's charge are set forth in article 36.19 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2006). When a defendant properly objected to the charge, the applicable statutory standard is whether "the error appearing from the record was calculated to injure the rights of the defendant," or in other words, whether there was "some harm." *Trevino v. State*, 100 S.W.3d 232, 242 (Tex. Crim. App. 2003).

"[U]nobjected-to jury-charge error warrants reversal only when the error results in egregious harm." *Pickens v. State*, 165 S.W.3d 675, 680 (Tex. Crim. App. 2005). "Egregious harm is a difficult standard to prove and such a determination must be done on a case-by-case basis." *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). Under this standard, reversible error occurs only when a defendant has been denied "a fair and impartial trial." *Oursbourn v. State*, 259 S.W.3d 159, 182 (Tex. Crim. App. 2008). "Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007). An appellate court "makes its own assessment" in evaluating what effect, if any, an error had on the jury's verdict by looking "only to the record before it." *Ovalle v. State*, 13 S.W.3d 774, 787 (Tex. Crim. App. 2000). Our review for egregious harm requires consideration of the entire charge, the evidence including the contested issues and weight of the probative evidence, the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole. *Scott v. State*, 253 S.W.3d 736, 742 (Tex. App.—Amarillo 2007, pet.

ref'd). The record must show the defendant suffered actual, rather than merely theoretical, harm from the jury instruction error. *Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985) (op. on reh'g).

## B. Culpable Mental State for the Offense

In issue seven, appellant argues that the trial court erred in denying his proposed application paragraphs for the jury charge, which contained the following language:

> Now, if you find from the evidence beyond a reasonable doubt that on or about [date], in Nueces County, Texas, the Defendant, Mauricio Celis, intentionally did then and there, with intent to obtain an economic benefit for himself, hold himself out as a lawyer, to wit: [by manner and means], and the defendant was not then and there licensed to practice law in this state, another state, or a foreign country and was not then and there in good standing with the State Bar of Texas and the state bar or licensing authority of any state or foreign country where the defendant was licensed to practice law, then you will find the defendant guilty of the offense of falsely holding himself out as a lawyer as charged in the indictment.

The jury charge submitted by the court did not include the word "intentionally" in the application paragraphs; however, the charge did require the jury to find that appellant acted "with intent to obtain an economic benefit for himself."

Appellant argues that because the statutory definition of the offense is silent on the requirement of a culpable mental state, but does not plainly dispense with a mental element, the trial court was required to submit a culpable mental state. *See* TEX. PENAL CODE ANN. § 6.02(b) (West Supp. 2010) (stating if definition of offense "does not prescribe a culpable mental state," a culpable mental state "is nevertheless required unless the definition plainly dispenses with any mental element"); *Sanchez v. State*, 209 S.W.3d 117, 122 n.38 (Tex. Crim. App. 2006) ("The failure to instruct the jury to find every necessary culpable mental state constitutes jury-charge error."); *Cook v. State*,

24

884 S.W.2d 485, 487 (Tex. Crim. App. 1994) (holding "in order to constitute a crime, the act or actus reus must be accompanied by a criminal mind or mens rea").

We are not persuaded that the statutory definition of the offense is silent on the requirement of a culpable mental state. *See Aguirre v. State*, 22 S.W.3d 463, 472 (Tex. Crim. App. 1999) ("[A] court must look for a manifest intent to dispense with the requirement of a culpable mental state, and . . . the silence of a statute about whether a culpable mental state is an element of the offense leaves a presumption that one is."). The statutory definition of the offense includes the specific "intent to obtain an economic benefit for himself." TEX. PENAL CODE ANN. § 38.122(a). In the context of other statutory offenses, the inclusion of this type of specific intent requirement in the definition of the offense has been interpreted as satisfying the traditional mens rea requirement of the criminal law. *See Ex parte Smith*, 645 S.W.2d 310, 312 (Tex. Crim. App. 1983) ("[T]he definition [of theft] requires a specific intent 'to deprive the owner of property.' No doubt the Legislature was satisfied that its definition met the traditional mens rea requirement of the criminal law."); *McKenzie v. State*, 617 S.W.2d 211, 213 (Tex. Crim. App. 1981) ("An essential element of the offense of indecency with a child is the mental state that accompanies the forbidden conduct: the specific intent to arouse or gratify the sexual desire of any person."); *State v. Sandoval*, 842 S.W.2d 782, 788 (Tex. App.—Corpus Christi 1992, pet. ref'd) ("The culpability required under the [barratry] statute is the intent 'to obtain an economic benefit.'").

In cases involving specific-intent offenses, courts have held that the jury charge should include only the specific intent required by the statute and that a jury charge is erroneous if it includes the general standards for mens rea such as intentionally or

25

knowingly. *See Bazanes v. State*, 310 S.W.3d 32, 37 (Tex. App.—Fort Worth 2010, pet. ref'd) ("Moreover, the charge included the required specific intent to arouse or gratify in the application portion, along with the erroneous 'intentionally and knowingly' language."); *Jones v. State*, 229 S.W.3d 489, 492 (Tex. App.—Texarkana 2007, no pet.) (finding error when charge "stated that indecency with a child is committed if the person intentionally or knowingly engages in sexual contact with a child"); *Washington v. State*, 930 S.W.2d 695, 699-700 (Tex. App.—El Paso 1999, no pet.) ("Section 21.11(a)(1) and Section 21.01(2) specify the culpable mental state that must be applied to the conduct, namely, the specific intent to arouse or gratify sexual desire. Thus, it seems superfluous to provide any definition of 'intentionally' in the jury charge."). In a case involving the barratry statute, which also requires the specific intent "to obtain an economic benefit," we have previously held that "no additional mental state must be alleged or proved." *See Sandoval*, 842 S.W.2d at 789.

In this case, the application paragraphs submitted in the jury charge tracked both the language of the indictments and the statutory definition of the offense. *See Casey v. State*, 215 S.W.3d 870, 886-87 (Tex. Crim. App. 2007) ("The charge here set forth the law applicable to the case by tracking the language of the statute."); *Martinez v. State*, 924 S.W.2d 693, 699 (Tex. Crim. App. 1996) ("Following the law as it is set out by the Texas Legislature will not be deemed error on the part of a trial judge."); *Riddle v. State*, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994) ("A jury charge which tracks the language of a particular statute is a proper charge on the statutory issue."). Furthermore, the jury charge is consistent with our decision in a case involving the barratry statute, where we held that no additional mental state must be alleged or

26

proved beyond the specific intent to obtain an economic benefit. *See Sandoval*, 842 S.W.2d at 789; *see also Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007) ("The purpose of the jury charge, of course, is to inform the jury of the applicable law and guide them in its application to the case."). Accordingly, we conclude that the trial court did not err in refusing to submit the application paragraphs proposed by appellant. *See Tovar v. State*, 165 S.W.3d 785, 792 (Tex. App.—San Antonio 2005, no pet.) ("Specifically requested charges may be refused where the instructions given by the court are adequate and fully protect the rights of the accused."); *McAfee v. State*, 658 S.W.2d 200, 200 (Tex. App.—El Paso, 1983 no writ) ("[S]pecific intent was both pled and charged and such a state of mind necessarily entails an entry that is made either intentionally or knowingly.").

Appellant's seventh issue is overruled.

## C. Mistake of Fact

In issue eight, appellant argues that the trial court erred in denying his requested jury instruction on mistake of fact. The general defense of mistake of fact, as codified in section 8.02(a) of the Texas Penal Code, provides: "It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for the commission of the offense." TEX. PENAL CODE ANN. § 8.02(a) (West 2003).

When an accused creates an issue of mistaken belief as to the culpable mental element of the offense, he is entitled to a defensive instruction of "mistake of fact." *Miller v. State*, 815 S.W.2d 582, 585 (Tex. Crim. App. 1991); *see also Granger v. State*, 3 S.W.3d 36, 41 (Tex. Crim. App. 1999) ("Therefore, in the instant case, the issue

27

before the trial court was whether appellant's purported belief, if accepted as true, negated the culpability required for murder."). When evidence from any source raises a defensive issue, and the defendant properly requests a jury charge on that issue, the trial court must submit the issue to the jury. *Trevino*, 100 S.W.3d at 237. The evidence which raises the issue could be "strong, weak, contradicted, unimpeached, or unbelievable." *Id.* An appellate court's duty is to look at the evidence supporting that charge, not the evidence refuting it. *Id.* at 239. This rule is designed to insure that the jury, not the judge, will decide the relative credibility of the evidence. *Miller*, 815 S.W.2d at 585. Absent a proper request, the trial court does not err by failing to instruct the jury on the defense of mistake of fact. *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998); *see also Mays v. State*, 318 S.W.3d 368, 383 (Tex. Crim. App. 2010) ("Because appellant failed to tell the trial judge what specific fact he was mistaken about, he was not entitled to an instruction on this defensive issue."); *Goodrich v. State*, 156 S.W.3d 141, 147-48 (Tex. App.—Dallas 2005, pet. ref'd) ("When requesting an instruction on the defense of mistake of fact, the party must specify the fact alleged to have been mistaken.").

Appellant requested an instruction on mistake of fact that was based on his allegedly "reasonable belief that he was licensed to practice law in Mexico and was in good standing with the licensing authority in Mexico." To relate to a mistake of fact defense under section 8.02(a), the mistaken belief must "negate[] the kind of culpability required for the commission of the offense." TEX. PENAL CODE ANN. § 8.02(a). Section 38.122(a) of the Texas Penal Code, which defines the relevant offense, prescribes the culpable mental state as "intent to obtain an economic benefit." TEX. PENAL CODE ANN.

28

§ 38.122(a). Appellant's alleged belief that he was licensed to practice law in Mexico and in good standing with the licensing authority in Mexico does not negate the culpable mental state to commit the offense. Therefore, appellant was not entitled to a mistake of fact instruction regarding his belief that he was licensed to practice law in Mexico and in good standing with the licensing authority in Mexico. *See Ingram v. State*, 261 S.W.3d 749, 753 (Tex. App.—Tyler 2008, no pet.) ("Appellant's alleged belief that the structure was abandoned did not relate to the culpable mental state to commit the offense. As such, Appellant was not entitled to a mistake of fact instruction regarding his belief that the structure was not a habitation.").

We also note that in his brief appellant has described his defense as "a reasonable belief that as a foreign (Mexican) lawyer, he could lawfully hold himself out as a Mexican lawyer [in Texas]." APPELLANT'S BRIEF at 30; *see also id.* at 48 ("Appellant's position, in a nutshell, was that he had a reasonable belief that he could hold himself out as a Mexican lawyer in Texas."). Appellant complains that "[t]he jury [was] . . . not given any vehicle in the jury charge whereby it could consider the defensive evidence of whether appellant reasonably believed that he could hold himself out as a Mexican lawyer in Texas." *Id.* at 29, n. 83.

This defensive theory concerns a mistake of law, not a mistake of fact. The only mistake it involves is the belief that it is lawful for a lawyer from Mexico to hold himself out as a lawyer in Texas. *See Legere v. State*, 82 S.W.3d 105, 109 (Tex. App.—San Antonio 2001, pet. ref'd) ("Legere's testimony, however, does not raise a mistake of fact defense. The testimony only shows that Legere did not believe that his conduct was illegal. None of the offenses with which Legere was charged required him to believe

29

that his conduct was illegal."); *Vitiello v. State*, 848 S.W.2d 885, 887 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd) (holding defendant was not entitled to mistake of fact instruction because, assuming defendant's version was true, his only mistake was believing his actions were not unlawful). Appellant has not argued that he was entitled to an instruction on mistake of law. *See Green v. State*, 829 S.W.2d 222, 223 (Tex. Crim. App. 1992) ("Section 8.03(b) of the Texas Penal Code sets forth two requirements which must be met before a defendant is entitled upon request to a mistake of law defense instruction. First, the defendant must establish that he reasonably believed that his conduct did not constitute a crime. Second, the defendant must establish that he reasonably relied upon either an administrative order or a written interpretation of the law contained in an opinion of a court of record.").

Appellant's eighth issue is overruled.

## D. Foreign Legal Consultant

In issue nine, appellant argues that the trial court erred in including "foreign legal consultant" in the jury charge definition of "good standing with the State Bar of Texas." Appellant argues that the court should have used the definition of "member in good standing with the State Bar of Texas" provided in Article I, Section 6 of the State Bar Rules. *See* TEX. STATE BAR RULES art. 1, § 6.[7]

---

[7] The jury charge instructed the jury as follows:

"Good standing with the State Bar of Texas" means:

    (1)  Being a "Member in Good Standing" of the State Bar of Texas; or

    (2)  Being certified to practice in Texas as a Foreign Legal Consultant by the Texas Board of Law Examiners.

       A "Member in Good Standing" of the State Bar of Texas is someone who meets and complies with all applicable requirements of the Rules of the

30

We are not persuaded that there was any error in the jury charge. The jury charge used the definition of "member in good standing with the State Bar of Texas" provided in Article I, Section 6 of the State Bar Rules, which appellant agrees was correct. Furthermore, the inclusion of foreign legal consultant was consistent with the law and supported by the evidence. The Texas Supreme Court has the authority to promulgate rules for the limited practice of law by attorneys licensed in other jurisdictions. *See* TEX. GOV'T CODE ANN. § 81.102(b)(1) (West 2005) ("The supreme court may promulgate rules prescribing the procedure for limited practice of law by attorneys licensed in another jurisdiction. . . ."); RULES GOVERNING ADMISSION TO THE BAR OF TEX. XIV, § 3 ("A person certified to practice as a Foreign Legal Consultant under this Rule may render legal services in Texas in the manner and to the extent permitted by the jurisdiction in which such person is admitted to practice. . . ."). The Rules Governing Admission to the Bar of Texas, including those providing for the limited practice of law by attorneys licensed in other jurisdictions, have "the same effect as statutes." *See Bd. of Law Examiners v. Stevens*, 868 S.W.2d 773, 776 (Tex. 1994).

At trial, Josh Hensley, the Director of Eligibility and Examination for the Texas Board of Law Examiners, testified that a lawyer from another country, such as Mexico, can become affiliated with the State Bar of Texas (without becoming a member) through certification as a foreign legal consultant. *See* RULES GOVERNING ADMISSION TO THE BAR

---

Supreme Court of Texas governing admission to the bar of Texas, and who is not in default of payment of dues and who is not under suspension from practice.

A "Foreign Legal Consultant" is someone certified under the Rules of the Supreme Court of Texas governing admission to the Bar of Texas, and who is considered a lawyer affiliated with the Bar of Texas.

31

OF TEX. XIV, § 1(a) ("In its discretion the Supreme Court may certify to practice in Texas as a legal consultant . . . a member in good standing of a recognized legal profession in a foreign country. . . ."), § 4 ("[A] person certified as a Foreign Legal Consultant under this Rule shall be considered a lawyer affiliated with the Bar of Texas. . . ."). According to Hensley's testimony, a foreign legal consultant is considered to be in good standing with the State Bar of Texas. *See id.* at § 5 ("A person certified to practice as a Foreign Legal Consultant under this Rule shall be subject to professional discipline in the same manner and to the same extent as persons admitted to the Texas Bar . . . ."). Thus, appellant is incorrect in his assumption that only members of the State Bar of Texas are capable of being in good standing with the bar.

We also disagree with appellant's assertion that the inclusion of foreign legal consultant afforded the jury with an improper basis upon which to find him guilty. On the contrary, it precluded the jury from finding appellant guilty based solely on his lack of membership in the State Bar of Texas. As submitted by the court, the jury charge allowed the jury to find that appellant was in good standing with the State Bar of Texas if he was either: (1) a member in good standing; or (2) affiliated as a foreign legal consultant. If foreign legal consultant had been omitted from the jury charge as appellant requested, the jury would have been allowed to find that appellant was in good standing with the State Bar of Texas only if he was a member. This would have been contrary to the plain meaning of the statute, which requires good standing with the State Bar of Texas, but not membership. *See* TEX. PENAL CODE ANN. § 38.122(a) (no offense occurs if person "is currently licensed to practice law in this state, another state, or a foreign country and is in good standing with the State Bar of Texas"); *Ex parte*

32

*Manrique*, 40 S.W.3d 552, 554 (Tex. App.—San Antonio 2001, no pet.) ("Lawyers licensed in other states are also clearly excluded from prosecution so long as they are in good standing with the State Bar of Texas and their own licensing bar or authority."); *see also Lomax v. State*, 233 S.W.3d 302, 308 (Tex. Crim. App. 2007) ("Where the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed and it is not for the courts to add to or subtract from such statute.").

Appellant's ninth issue is overruled.

## V. Constitutionality of Texas Penal Code Section 38.122

In issues ten through thirteen, appellant challenges the constitutionality of section 38.122 of the Texas Penal Code based on vagueness and overbreadth.

### A. Standard of Review and Applicable Law

The burden rests upon the person who challenges a statute to establish its unconstitutionality. *Kfouri v. State*, 312 S.W.3d 89, 92 (Tex. App.—Houston [14th Dist.] 2010, no pet.). In determining whether a law is vague or overbroad, we keep in mind the elementary principles of statutory construction: we interpret a statute in accordance with the plain meaning of its language unless the language is ambiguous or the plain meaning leads to absurd results. *Sanchez v. State*, 995 S.W.2d 677, 683 (Tex. Crim. App. 1999). In determining plain meaning, "words and phrases shall be read in context and construed according to the rules of grammar and usage." Tex. Gov't Code Ann. § 311.011(a) (West 2005); *see* Tex. Penal Code Ann. § 1.05(b) (West 2003) (extending application of section 311.011 to penal code). If a statute can be construed in two different ways, one of which sustains its validity, we apply the interpretation that

33

sustains its validity. *See State v. Carmaco*, 203 S.W.3d 596, 599 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

"A facial challenge to a legislative act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the act would be valid." *Briggs v. State*, 789 S.W.2d 918, 923 (Tex. Crim. App. 1990); *State v. Garcia*, 823 S.W.2d 793, 796-97 (Tex. App.—San Antonio 1992, pet. ref'd). In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. *Garcia*, 823 S.W.2d at 797 (citing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494-95 (1982)). If it does not, then the overbreadth challenge must fail. *Id*. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications. *Id*.

## B. Facial Challenge to the Overbreadth of Section 38.122

In issue twelve, appellant argues that section 38.122 of the Texas Penal Code is unconstitutionally overbroad on its face.[8] The justification for the application of overbreadth analysis applies weakly, if at all, in the ordinary commercial context. *Garcia*, 823 S.W.2d at 797 (citing *Bates v. State Bar of Arizona*, 433 U.S. 350, 380 (1977)). "Where, as here, the regulation of the commercial enterprise, the practice of

---

[8] We address appellant's issues ten through thirteen out of order because the standard applicable to constitutional challenges requires that we address issues involving the overbreadth of a statute before addressing issues involving the vagueness of a statute. *See Maloney v. State*, 294 S.W.3d 613, 626 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ("When an appellant challenges a statute as both unconstitutionally overbroad and vague, we address the overbreadth challenge first."). Accordingly, we address issues twelve and thirteen before addressing issues ten and eleven.

law, is a subject of legitimate and substantial government interest, the mere fact that regulation has an incidental impact on speech is not sufficient to render the statute invalid." *Ex parte Manrique*, 40 S.W.3d 552, 553 (Tex. App.—San Antonio 2001, no pet.). Thus, the San Antonio Court of Appeals has previously upheld the constitutionality of section 38.122, concluding that the "statute affects only commercial speech in the context of employment as a lawyer . . . [and] therefore . . . is not facially overbroad." *Id.* at 554.

Lawyer advertising is the focus of appellant's facial challenge to the overbreadth of the statute. According to appellant, while "it makes perfect sense" for the State of Texas to regulate lawyer advertising "in the context of a lawyer licensed by the State Bar of Texas, it makes absolutely no sense in the context of a lawyer from another state or another country." APPELLANT'S BRIEF at 63. Appellant contends that the statute will "totally eliminate advertising by out of state and out of country lawyers in Texas." *Id.*

We are not persuaded that section 38.122 involves anything other than the regulation of commercial speech, a context in which the overbreadth analysis applies weakly, if at all. *Garcia*, 823 S.W.2d at 797. The United States Supreme Court has refused to apply an overbreadth analysis to lawyer advertising. *See Bates*, 433 U.S. at 381. Relying on the *Bates* decision and other precedent, this Court has previously refused to apply an overbreadth analysis to the Texas barratry statute. *See Sandoval*, 842 S.W.2d at 786-87.

In this case, we note that the State of Texas has a compelling interest in regulating the commercial speech of individuals (even those from other states or countries) who hold themselves out as lawyers in Texas and such regulations are for

35

the benefit and protection of the people as a whole. *See Sperry v. Florida*, 373 U.S. 379, 383 (1963) (recognizing that a state has a "substantial interest in regulating the practice of law within the State"); *Hexter Title & Abstract Co. v. Grievance Comm.*, 179 S.W.2d 946, 948 (Tex. 1944) ("The State has a vital interest in the regulation of the practice of law for the benefit and protection of the people as a whole."). Accordingly, we join the San Antonio Court of Appeals in holding that section 38.122 is not facially overbroad.

Appellant's twelfth issue is overruled.

## C. Challenge to the Overbreadth of Section 38.122 as Applied to Appellant

In issue thirteen, appellant argues that section 38.122 of the Texas Penal Code is unconstitutionally overbroad as applied to him. Appellant argues that his First Amendment rights were violated by his convictions on count 2 ("stating on a business card that he was licensed in Mexico") and count 5 ("being described on a business webpage as an attorney at law, and a licensed attorney in Mexico") in Cause No. 07-CR-4046-E.

The fact that the enforcement of a statute operates to prohibit and restrain freedom of speech does not itself mean that the statute is invalid. *See Allen v. State*, 604 S.W.2d 191, 192 (Tex. Crim. App. 1980). The overbreadth doctrine is "strong medicine" that should be employed "sparingly" and "only as a last resort." *Ex parte Ellis*, 309 S.W.3d 71, 91 (Tex. Crim. App. 2010). "[T]he overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Id.* (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 615, (1973)). The statute must be "closely drawn to match a sufficiently important interest." *Id.*

36

The constitutional guarantees of freedom of speech forbid the States to punish the use of words or language not within narrowly limited classes of speech. *See Morehead v. State*, 807 S.W.2d 577, 580 (Tex. Crim. App. 1991) (citing *Gooding v. Wilson*, 405 U.S. 518, 521-522 (1972)). Even as to such classes, "the statute must be carefully drawn or be authoritatively construed to punish only unprotected speech." *Id.* For example, the states may, by narrowly drawn statutes, prohibit obscenity, *id.* (citing *Roth v. United States*, 354 U.S. 476 (1957)), child pornography, *id.* (citing *New York v. Ferber*, 458 U.S. 747 (1982)), "fighting words," *id.* (citing *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942)), and the incitement to imminent lawless activity, *id.* (citing *Brandenburg v. Ohio*, 395 U.S. 444 (1969)). On the other hand, the states may not criminalize speech that is merely insulting, *id.* (citing *Gooding*, 405 U.S. at 518) or speech that opposes or challenges police action, *id.* (citing *Houston v. Hill*, 482 U.S. 451 (1987)). "Speech is often provocative and challenging . . . [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *Id.* (quoting *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949)).

In overruling appellant's facial challenge to the overbreadth of section 38.122, we have concluded that the statute affects only commercial speech in the context of employment as a lawyer. *See Ex parte Manrique*, 40 S.W.3d at 553. We see no reason for reaching a different conclusion in addressing appellant's challenge to the overbreadth of the statute as applied to him. *See Village of Hoffman Estates*, 455 U.S. at 496 ("[T]he overbreadth doctrine does not apply to commercial speech."). In the context of the Texas barratry statute, the Texas Supreme Court has held that a lawyer

who paid non-lawyers to solicit remunerative employment for himself was not exercising any rights to free expression. *See O'Quinn v. State Bar of Texas*, 763 S.W.2d 397, 403 (Tex. 1988). The Texas Court of Criminal Appeals has also rejected the contention that the barratry statute "is unconstitutional because it imposes a limitation on the right of free speech." *Barbee v. State*, 432 S.W.2d 78, 85 (Tex. Crim. App. 1968). In this case, appellant was not convicted because he engaged in expressive activity protected by the First Amendment, but because he falsely held himself out as a lawyer with the intent to obtain an economic benefit for himself. *See Clark v. State*, 665 S.W.2d 476, 482 (Tex. Crim. App. 1984) ("[I]ntentionally false or misleading statements made in a commercial context are not within the protection of the First Amendment."); *Covalt v. State*, 877 S.W.2d 445, 448 (Tex. App.—Houston [1st Dist.] 1994, no pet.) ("Lying under oath is not a constitutionally protected activity."). Even assuming appellant's conduct did not involve purely commercial speech and that the overbreadth doctrine were therefore applicable to section 38.122 of the Texas Penal Code, the statute's prohibition against falsely holding oneself out as a lawyer is substantially related to legitimate state interests in regulating the practice of law in Texas. *See O'Quinn*, 763 S.W.2d at 403 ("[A] ban on in-person solicitation by lawyers and/or their runners is substantially related to legitimate state interests.").

Appellant's thirteenth issue is overruled.

### D. Facial Challenge to the Vagueness of Section 38.122

In issue ten, appellant argues that section 38.122 of the Texas Penal Code is unconstitutionally vague on its face.

"As a fundamental proposition, all criminal laws must give notice to the populace as to what activity is made criminal so as to provide fair notice to persons before making their activity criminal." *Bynum v. State*, 767 S.W.2d 769, 773 (Tex. Crim. App. 1989). "The rationale for this is obvious: crimes must be defined in advance so that individuals have fair warning of what is forbidden." *Id.* A lack of notice poses a "trap for the innocent" and violates due process. *Id.* (citing *United States v. Cardiff*, 344 U.S. 174, 176 (1952)).

The standard used to decide a challenge to the vagueness of a statute varies depending on whether or not the First Amendment is involved. If First Amendment freedoms are implicated, a criminal law must: (1) be sufficiently clear to afford a person of ordinary intelligence a reasonable opportunity to know what is prohibited; (2) establish determinate guidelines for law enforcement; and (3) be sufficiently definite to avoid chilling protected expression. *Ex parte Ellis*, 309 S.W.3d at 86. When a vagueness challenge involves First Amendment considerations, a criminal law may be held facially invalid even if the law has some valid application. *Id.*; *see also Long v. State*, 931 S.W.2d 285, 288 (Tex. Crim. App. 1996) ("When a vagueness challenge involves First Amendment concerns, the statute may be held facially invalid even though it may not be unconstitutional as applied to the appellant's conduct.").

If the First Amendment is not involved, a facial vagueness challenge can succeed only if it is shown that the law is unconstitutionally vague in all of its applications. *Ex parte Ellis*, 309 S.W.3d at 80. In such cases, vagueness is determined based on the standards of the Due Process Clause, which require that a law be specific enough to: (1) give a person of ordinary intelligence a reasonable

opportunity to know what is prohibited; and (2) establish determinate guidelines for law enforcement. *Sanchez*, 995 S.W.2d at 690.

In determining the threshold issue of whether "the statute, as authoritatively construed, is susceptible of application to speech guaranteed by the First Amendment," we note that commercial speech is subject to constitutional protection, though less than the protection afforded to other forms of constitutionally guaranteed expression. *Scott v. State*, 322 S.W.3d 662, 665 n.3 (Tex. Crim. App. 2010); *see also Pruett v. Harris County Bail Bond Bd.*, 249 S.W.3d 447, 456 (Tex. 2008) ("Commercial speech is generally afforded less constitutional protection than other forms of constitutionally guaranteed expression."). For commercial speech to come within the provision of the First Amendment, "it at least must concern lawful activity and not be misleading." *Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 566 (1980). Section 38.122 of the Texas Penal Code makes it an offense to falsely hold oneself out as a lawyer, activity which takes place in the commercial context and necessarily involves expressions of a false and misleading nature which are not protected by the First Amendment. *See Knight v. State*, 91 S.W.3d 418, 425 (Tex. App.—Waco 2002, no pet.) ("Speech is not protected by the First Amendment when it is the very vehicle of the crime itself."). Accordingly, we conclude that section 38.122 does not broadly prohibit speech protected by the First Amendment and that appellant's vagueness challenge does not fall within the limited exception under which a criminal law may be held facially invalid even if it has some valid application. *See Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992) ("A limited exception has been recognized for statutes that broadly prohibit speech protected by the First Amendment.").

Appellant has the burden to establish that section 38.122 of the Texas Penal Code is unconstitutionally vague in all of its applications. *See Ex parte Ellis*, 309 S.W.3d at 80. Appellant's arguments concern the vagueness of the statute as it applies to individuals who are licensed to practice law in states other than Texas and foreign countries. According to appellant, the statute is unconstitutionally vague on its face because it fails to define the terms "lawyer" and "in good standing with the State Bar of Texas." Appellant contends that the vagueness of the term "lawyer" prevents a person from out of state or a foreign country "from ascertain[ing] whether he or she falls within Texas' definition of 'lawyer,' whatever that might be, if in fact one exists." APPELLANT'S BRIEF at 67. As a result, "an attorney licensed in another state or a foreign country would not be on fair notice that his or her acts of representing himself or herself in Texas as an attorney from that other state or country would be illegal unless he or she was . . . 'in good standing with the State Bar of Texas.'" *Id.* at 68. In addition, there is no fair notice that a person must be licensed to practice law in Texas in order to be in good standing with the State Bar of Texas. *See id.*

Appellant has not attempted to show that section 38.122 of the Texas Penal Code is unconstitutionally vague as it applies to lawyers currently or formerly licensed to practice law in Texas or other persons in Texas who are not lawyers. As such, appellant has failed to meet his burden of establishing that the statute is unconstitutionally vague in all of its applications. *See Ex parte Ellis*, 309 S.W.3d at 80. Appellant's tenth issue is overruled.

### E. Challenge to the Vagueness of Section 38.122 as Applied to Appellant

In issue eleven, appellant argues that section 38.122 of the Texas Penal Code is unconstitutionally vague as applied to him. Appellant's argument is based on the failure of the statute to define the terms "lawyer" and "in good standing with the State Bar of Texas." According to appellant, the statute failed to give him fair notice that it was unlawful to hold himself out as a lawyer in Texas unless he was licensed to practice law in Texas and in good standing with the State Bar of Texas.[9]

The relevant inquiry is whether section 38.122 of the Texas Penal Code: (1) gives a person of ordinary intelligence a reasonable opportunity to know what is prohibited; and (2) establishes determinate guidelines for law enforcement. *See Sanchez*, 995 S.W.2d at 690. A statute is not unconstitutionally vague merely because the words or terms used are not specifically defined. *Engelking v. State*, 750 S.W.2d 213, 215 (Tex. Crim. App. 1988). In the absence of special definitions, the language under attack can be "measured by common understanding and practices" or "construed in the sense generally understood." *Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. 1979).

We disagree with appellant's argument that he had no way of ascertaining whether or not he was holding himself out as a lawyer because the term "lawyer" is not defined by section 38.122. The statute, which prohibits falsely holding oneself out as a lawyer, provides a sufficient (albeit implicit) definition of the term "lawyer" by stating that no offense is committed if a person is "currently licensed to practice law in this state, another state, or a foreign country and is in good standing with the State Bar of Texas

---

[9] In addressing appellant's issues involving jury charge error, we explained that appellant's interpretation of the statute is incorrect. The statute did not require appellant to be licensed to practice law in Texas, as appellant contends; however, the statute did require that appellant be in good standing with the State Bar of Texas. *See* TEX. PENAL CODE ANN. § 38.002(a).

42

and the state bar or licensing authority of any and all other states and foreign countries where licensed." TEX. PENAL CODE ANN. § 38.122(a). A person who meets these requirements is considered a lawyer and is therefore not subject to prosecution. We believe that the statute provides sufficient information for an ordinary, law-abiding individual to know that his or her conduct risks violating a criminal law unless he or she meets the requirements for being a lawyer set forth in the statute. *See Bynum*, 767 S.W.2d at 773.

Appellant also argues that the statute is unconstitutionally vague because it fails to define the term "in good standing with the State Bar of Texas." Appellant contends that he is no different than lawyers who are licensed to practice law in other states who hand out their business cards while in Texas and that the statute failed to give him fair notice that he was required to do anything to be considered "in good standing with the State Bar of Texas."

The vagueness of section 38.122 of the Texas Penal Code as it applies to out of state lawyers is not a relevant consideration in our analysis. *See Blanco v. State*, 761 S.W.2d 38, 41 (Tex. App.—Houston [14th Dist.] 1988, no pet.) ("However, when appellant's conduct, as here, falls so clearly within the proscribed activity, he cannot complain of the law's vagueness as applied to others."); *Duncantell v. State*, 230 S.W.3d 835, 845 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) ("A person who engages in conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others."). Because we have determined that there is legally sufficient evidence to support appellant's convictions for engaging in the proscribed activity, we will sustain his challenge to the vagueness of the statute only if it

43

is unconstitutionally vague as applied to the conduct at issue in this case. *See Duncantell v. State*, 230 S.W.3d at 845 ("As our discussion of the sufficiency of the evidence indicates, appellant violated the interference statute and therefore, we will sustain his facial vagueness challenge only if the statute is impermissibly vague as applied to his conduct at issue here.").

This is not a situation in which no core of prohibited activity is defined. *Ex parte Anderson*, 902 S.W.2d 695, 699 (Tex. App.—Austin 1995, pet. ref'd) ("A statute is, however, unconstitutionally vague when no core of prohibited activity is defined."). Section 38.122 makes it an offense to hold oneself out as a lawyer with the intent to obtain an economic benefit, unless the person meets the requirements for being a lawyer set forth in the statute. Being "in good standing with the State Bar of Texas" is one of those requirements. Although the term is not defined, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ex parte Ellis*, 309 S.W.3d at 86.

In this case, the requirement of being in good standing with the State Bar of Texas gave appellant a reasonable opportunity to know that it was unlawful to hold himself out as a lawyer in Texas solely because it was not unlawful for him to do so in Mexico. The statute is sufficiently clear and precise to give fair warning that the practice of law is closely regulated in Texas and that a person must be in good standing with the State Bar of Texas to avoid committing a criminal offense. *See Webb v. State*, 991 S.W.2d 408, 416 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) ("The statutory language is not unconstitutionally vague—it conveys a sufficient warning about the proscribed conduct when measured by a common understanding and practice.").

44

In addition, the good standing requirement provides determinate guidelines for law enforcement by incorporating into the statute the attorney-licensing and rule-making authority of the Texas Supreme Court, the administrative function of the Texas Board of Law Examiners as the agency that facilitates the licensing process, and the minimum professional standards and requirements adopted by the State Bar of Texas as a self-regulating body. Therefore, there is no need to resort to subjective or arbitrary analysis to determine whether a violation of the statute has occurred. *See Bynum*, 767 S.W.2d at 775 ("The statute adequately details the prohibited conduct to the extent that the enforcement of the statute would not be relegated to subjective interpretation.").

Appellant's eleventh issue is overruled.

## VI. EVIDENTIARY RULINGS

In issues fourteen and fifteen, appellant complains about errors in the trial court's rulings on the admissibility of evidence.

### A. Standard of Review

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2011). The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement. *Green v. State*, 934 S.W.2d 92, 104 (Tex. Crim. App. 1996). If the trial court's decision was correct on any theory of law applicable to the case, we will sustain it. *Prystash v. State*, 3 S.W.3d 522, 527 (Tex. Crim. App. 1999); *see also Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004) ("If the ruling was correct on any theory of law applicable to the case, in light of what was before the trial court at the time the ruling was made, then we must uphold the

45

judgment."). This is true even if the trial judge failed to give any reason or used the wrong reason for the ruling. *Prystash*, 3 S.W.3d at 527.

Generally, if the trial court's ruling "merely offends the rules of evidence," the erroneous admission or exclusion of evidence is nonconstitutional error governed by rule 44.2(b) of the Texas Rules of Appellate Procedure. *Melgar v. State*, 236 S.W.3d 302, 308 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (citing *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001)); *see also Bagheri v. State*, 119 S.W.3d 755, 762-63 (Tex. Crim. App. 2003). When evaluating harm under rule 44.2(b), we "need only determine whether or not the error affected a substantial right of the defendant." *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). Substantial rights are not affected by the erroneous admission or exclusion of evidence "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (citations omitted). If the evidence is generally cumulative of other evidence introduced in the case, no harm attaches. *See Anderson v. State*, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986) (holding that to show harm, the excluded evidence must be controlling on a material issue and not cumulative of other evidence); *Rangel v. State*, 179 S.W.3d 64, 70 (Tex. App.—San Antonio 2005, pet. ref'd) (holding there is no harm when complained-of evidence was admitted through other testimony); *Franks v. State*, 90 S.W.3d 771, 805-06 (Tex. App.—Fort Worth 2002, no pet.) (holding there is no harm when complained-of testimony was generally cumulative of other evidence introduced in case).

**B. Exclusion of the Letter from the Supreme Court of Tamaulipas**

46

In issue fourteen, appellant argues that the trial court erred in excluding from evidence a letter from Judge Perez of the Supreme Court of Tamaulipas, which like the letter from the Supreme Court of Chihuahua, indicated that appellant, like all citizens of Mexico, has a constitutional right to practice law in some limited areas. The State objected to the letter as hearsay. *See* TEX. R. EVID. 802. Appellant argued that the letter was admissible based on the public records exception to the hearsay rule. *See* TEX. R. EVID. 803(8)(B). The State maintained that the document was not admissible because appellant had not established that it qualified as a public record setting forth "matters observed pursuant to duty imposed by law as to which matters there was a duty to report." *See id.*

Although Rule 803(8)(C) does not require that a formal "predicate" be laid through a predicating witness, the offered document must still be shown to satisfy the requirements of the Rule. *See Cowan v. State*, 840 S.W.2d 435, 437 (Tex. Crim. App. 1992) ("[T]he requirements for admissibility under Rule 803(8)(C) may be met by circumstantial evidence from the face of the offered document."). According to the State, appellant failed to prove that Judge Perez had a duty imposed by law to report the matters set forth in the letter. *See Cowan v. State*, 840 S.W.2d 435, 438 n.11 (Tex. Crim. App. 1992) ("[S]ection (B) of the Rule does suggest that . . . the report be of matters observed 'pursuant to a duty imposed by law' and that there was a 'duty to report.'") (citations omitted).

We are not persuaded that the trial court abused its discretion in excluding the letter from evidence or that appellant suffered any harm from its exclusion. As noted above, a similar letter from the Supreme Court of Chihuahua was admitted into

47

evidence. Appellant argues the letter from the Supreme Court of Tamaulipas was not cumulative of the other letter because it was not susceptible to having its credibility undermined by being included in what the State called appellant's "aye Chihuahua defense." Although we appreciate the limitations created by the court's ruling, the letters are substantially the same. *See Guerra v. State*, 942 S.W.2d 28, 33 (Tex. App.—Corpus Christi 1996, pet. ref'd) ("The standard on exclusion of cumulative evidence and harmless error dictates that no harm results when evidence is excluded if other evidence of substantially the same nature is admitted.").

Furthermore, the probative value of the evidence was limited to the issue of whether or not appellant could practice law in Mexico without a "cedula." As we have explained in connection with appellant's other issues, a license to practice law in Mexico is necessary, but not sufficient, for appellant to lawfully hold himself out as a lawyer in Texas with the intent to obtain an economic benefit for himself. Because the letter excluded from evidence had no probative value on the issue of whether or not appellant was in good standing with the State Bar of Texas, which was necessary for appellant's conduct to be lawful, we have fair assurance that the error, if any, in excluding the letter from evidence either did not influence the jury or had but a slight effect. *See Morales*, 32 S.W.3d at 867 ("The fact that a piece of evidence was wrongfully excluded from the jury's consideration is not sufficient to warrant reversal of a conviction unless the exclusion had a 'substantial and injurious effect or influence in determining the jury's verdict.'") (citations omitted).

Appellant's fourteenth issue is overruled.

**C. Admission of Testimony by Attorney Raymond Thomas**

48

In issue fifteen, appellant argues that the trial court erred in overruling his hearsay objection to the following testimony by attorney Raymond Thomas:

> Q. [Counsel]    Have you ever found a degree from Regiomontana for Mauricio Celis?
>
> . . .
>
> A. [Thomas]    I checked with the authorities. I did not find a diploma or a license.

We do not agree with appellant's contention that the foregoing testimony was hearsay. *See Star Houston, Inc. v. Kundak*, 843 S.W.2d 294, 298 (Tex. App.—Houston [14th Dist.] 1992, no writ) ("If the witness states that of his own knowledge he heard X make a certain assertion and this is offered to prove the truth of the assertion, the testimony is hearsay. If, on the other hand, the witness states that a certain fact is true but in some manner discloses that his statement is founded on information received from X, the proper objection in strictness is not hearsay but a want of testimonial qualification of personal knowledge on the part of the witness. . . .") (citing 1A Roy R. Ray, LAW OF EVIDENCE § 793 (Texas Practice 1980)).

Furthermore, even if the ruling were an abuse of discretion, it would not be reversible error because the same or similar evidence was admitted through the testimony of appellant and his witnesses. *See Zorn v. State*, 315 S.W.3d 616, 625 (Tex. App.—Tyler 2010, no pet.) ("Even the erroneous admission of evidence will not result in reversible error if the same evidence is admitted elsewhere in the trial without objection."). Appellant testified that although he has a diploma in judicial sciences, it has never been registered with the Ministry of Education. Appellant also testified that he does not have a cedula. According to appellant's testimony, "The Constitution does not require that you be a licensed attorney or have a diploma in law to practice law in

Mexico." Appellant also called two witnesses, Jose Martin de Valenzuela Hernandez and Hector Rene Valdez Diaz, to testify that it is not necessary to go to law school or to obtain a law license to practice law in Mexico. Based on the foregoing, we have fair assurance that the error, if any, in overruling appellant's hearsay objection to Thomas's testimony either did not influence the jury or had but a slight effect. *See Motilla*, 78 S.W.3d at 355.

Appellant's fifteenth issue is overruled.

## VII. CONCLUSION

Having overruled appellant's eighteen issues on appeal, we affirm the judgments of the trial court.

_____
ROGELIO VALDEZ
Chief Justice

Publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
31st day of August, 2011.